**CONTINENTAL CASUALTY COMPANY, Plaintiff-Appellant, Cross-Appellee,**

v.

**AETNA CASUALTY AND SURETY COMPANY, Hartford Accident and Indemnity Company, the American Insurance Company and James W. Flynn, II, Defendants-Appellees,**

**Aetna Casualty and Surety Company, Defendant-Appellee, Cross-Appellant.**

Nos. 1130, 1198, Dockets 87–7166, 87–7204.

United States Court of Appeals, Second Circuit.

Argued May 11, 1987.

Decided July 16, 1987.

Philip J. O'Connor, Hartford, Conn. (Gordon, Muir and Foley, Hartford, Conn., of counsel), for Continental Cas. Co.

James F. Stapleton, Stamford, Conn. (Day, Berry & Howard, Stamford, Conn., Thomas J. Byrne, Stefan R. Underhill, of counsel), for Aetna Cas. and Sur. Co.

Before LUMBARD, PRATT and ALTIMARI, Circuit Judges.

LUMBARD, Circuit Judge:

This declaratory judgment action arises from a dispute between two excess insurers, Continental Casualty Company and Aetna Casualty and Surety Company, over their respective rights and obligations regarding coverage for a motor vehicle accident. On February 2, 1987, Judge T. Emmet Clarie filed judgment in the District of Connecticut, apportioning excess liability equally between the two insurers. Continental appeals, arguing that Aetna should bear the full burden of excess coverage because it insured the car involved in the accident—in lexicon of the insurance industry, because "coverage follows the car." Aetna cross-appeals on the ground that the language of the two policies makes Continental's liability prior to Aetna's. If liability is apportioned, Aetna contends further, it should not be divided equally but in proportion to the respective policy limits. We affirm, but modify the judgment to apportion liability based upon policy limits.

In lieu of a trial, the parties submitted stipulated facts, including four insurance policies, to the district court. On December 17, 1977, James Flynn, Sr. (Mr. Flynn), president and sole shareholder of North

Atlantic Oil, Ltd., loaned the company's corporate car, a Cadillac registered in North Atlantic's name, to his 16–year-old son and asked him to run a family errand. While driving the Cadillac, James, Jr. was involved in a major automobile accident in Fairfield, Connecticut, which left Jo Ann Strait seriously and permanently injured. Subsequently, Charles M. Strait, Jo Ann's conservator, brought suit against James, Jr. in state court. The case settled before trial for $2,479,319, pursuant to a structured settlement agreement.

Four insurance policies issued by four different insurers covered James, Jr. The Hartford Accident and Indemnity Company contributed the maximum amount of $500,000 under its primary automobile liability policy issued to North Atlantic, which covered the Cadillac. Continental and Aetna paid the remaining $1,979,319 of the settlement, explicitly reserving their right to have their obligations determined in this action. Continental paid pursuant to its excess liability policy issued to Mr. Flynn, because the policy covered Mr. Flynn and his family members while driving non-owned vehicles. Continental's policy contained a $5,000,000 policy limit. Aetna's liability derived from an excess liability policy issued to North Atlantic. This policy covered permissive users of North Atlantic's vehicles, including the Cadillac. The maximum amount of Aetna's policy is $2,000,000. The parties agreed that American Insurance Company, the fourth insurer which issued a $100,000 policy to Mr. Flynn on his personally owned Camaro, would pay $30,000 in full satisfaction of its potential liability. That sum will be divided between Continental and Aetna in accordance with our decision.

Both Continental and Aetna policies are excess/umbrella policies containing "other insurance" clauses. Continental's policy states, "[t]his policy provides coverage over and above any of your other insurance policies." The policy defines "you, your or yours" to mean "the person named in the declarations [Mr. Flynn] and his or her spouse." Aetna's policy provides, in pertinent part, "[t]he insurance afforded by this policy shall be excess insurance over any other valid and collectible insurance available to the insured and applicable to any part of ultimate net loss ... unless such other insurance specifically applies as excess insurance over the limits of liability provided in this policy" (emphasis deleted). It defines "insured" as "any person while using [the Cadillac] ... provided its actual use is with the permission of [North Atlantic]."

As our jurisdiction rests upon diversity of citizenship, we apply Connecticut law. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Do the two "other insurance" clauses in fact conflict with each other? We think so. Relying on Continental's definition of "you, your or yours" as Mr. Flynn and his wife, Aetna argues that Continental's "other insurance" clause only makes Continental's liability excess "to additional insurance policies *owned* by Mr. and Mrs. Flynn" (emphasis added). Aetna therefore concludes that it escapes liability because North Atlantic, not Mr. or Mrs. Flynn, owns its policy. Judge Clarie brushed this argument aside, stating that "[s]uch a conclusion on its face is not tenable; obviously, ['your'] was used only in a generic sense." We agree.

■ Aetna's argument depends upon its equation of "your other insurance policies" with policies *owned* by Mr. or Mrs. Flynn. We are not persuaded. We interpret Continental's reference to Mr. or Mrs. Flynn's other policies to mean other policies available or paid to them or someone claiming derivatively through them. As the proceeds of the Aetna policy are available or payable to James, Jr., whose coverage from Continental derives from Mr. Flynn, we conclude that Continental's "other insurance" clause, by its own terms, purports to make its liability excess to Aetna.

This construction more closely comports with the common sense meaning of Continental's "other insurance" clause—Aetna never explained why Continental would want to make its liability excess only to those policies owned by Mr. or Mrs. Flynn, and not to other policies which paid to them

or others claiming through them. Nor does the fact that Aetna's "other insurance" clause more explicitly describes the scope of its liability alter our conclusion. We agree with Judge Clarie that ranking policies in this manner "would serve to encourage insurance companies to compete endlessly for the ultimate language to be used in excess clauses," for no good reason.

█ Continental does not dispute that Aetna's policy purports to make its liability subordinate to Continental's. Accordingly, we hold that the excess clauses of Aetna and Continental are mutually repugnant.

Continental contends that when two excess policies conflict, the excess policy of the automobile's owner should pay prior to the excess policy covering the nonowning driver of the automobile—in other words, "coverage follows the car." Continental begins by arguing that the basic coverage of the automobile owner precedes the basic coverage of the non-owning driver, citing, *e.g., Union Ins. Co. v. Farmland Ins. Co.,* 389 N.W.2d 820, 822 (S.Dak.1986), and *Indiana Ins. Co. v. American Underwriters, Inc.,* 290 N.E.2d 784, 786 (Ind.Ct.App. 1972), and that a driver's basic policy comes before the owner's umbrella policy. It reasons that the next logical step in the "evolution" of insurance policy classification would be to require the owner's umbrella policy to pay before the driver's umbrella policy, thus absolving Continental of liability. We disagree.

█ Continental's premise that the owner's basic coverage pays prior to the driver's basic coverage is not entirely accurate. A substantial number of the cases ostensibly applying this principle merely follow "the general rule that where an excess clause and pro-rata clause appear in concurrently effective automobile liability policies, the pro-rata clause is disregarded and full effect is given to the excess clause, making the pro-rata policy the primary insurance." *Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co.,* 28 N.J. 554, 147 A.2d 529, 533 (1959). *See also Allstate Ins. Co. v. Atlantic National Ins. Co.,* 202 F.Supp. 85, 87 (S.D.W.Va.1962); 8A J. Appleman & J. Appleman, *Insurance Law & Practice,* § 4909.45 at 425–27 (Rev. ed. 1981). Continental admits this, but contends that "the prevalence of non-owned car' [sic] excess clauses ... merely reflects the general acceptance of the [coverage follows the car] principle by the insurance industry." We find such circular reasoning to be wholly unpersuasive.

The "coverage follows the car" principle also lacks a persuasive rationale. When the courts which apply the principle bother to state its rationale, they explain that the car is closer to the risk than the driver. *See Transamerican Ins. Co. v. Austin Farm Center, Inc.,* 354 N.W.2d 503, 508 (Minn.Ct.App.1984). It is difficult to see how this relationship is capable of measurement. As a leading insurance law treatise states, "[a]n equally reasonable argument could be made for a different approach," even in the basic coverage arena. 8A J. Appleman & J. Appleman, *supra,* § 4906 at 347.

As Continental's novel principle can claim neither a solid basis in Connecticut law—Continental's main brief cited only one Connecticut case on a tangential point—nor a compelling rationale, we agree with Judge Clarie that Connecticut courts would follow the better reasoned rule and pro-rate liability between the insurers. *E.g., St. Paul Mercury Ins. Co. v. Underwriters at Lloyds of London,* 365 F.2d 659, 663 (10th Cir.1966); *Oregon Auto Ins. Co. v. United States Fidelity & Guar. Co.,* 195 F.2d 958, 960 (9th Cir.1952). *See generally* 8A J. Appleman & J. Appleman, *supra,* § 4909 at 395–96 (Where "each insurer has attempted to make his coverage 'excess' ... [t]he courts ... will require the insurers, in the ordinary instance, to prorate the loss.") (citing cases); "Apportionment of Liability Between Liability Insurers Each of Whose Policies Provides That It Shall Be 'Excess' Insurance," 69 A.L.R.2d 1122 (1960) (collecting cases).

When pro-rating liability between insurers, courts must consider that each additional increment of coverage costs less to provide than the previous increment. In other words, the cost of insuring the first

million dollars of risk may be substantially greater than the cost of insuring the second million dollars. Judge Clarie explained that once the unit cost of a million dollars of insurance coverage has been established, the insurance companies use a factor of 1.25 in pricing $2 million of insurance; a factor of 1.4 in pricing $3 million; a factor of 1.45 in pricing $4 million; and a factor of 1.5 in pricing $5 million.

Because cost does not increase in direct proportion to the amount of coverage, neither apportioning liability according to policy limits, *see e.g., Oregon Auto Ins. Co., supra,* 195 F.2d at 960—the "majority" rule—nor apportioning liability equally, *see, e.g., Reliance Ins. Co. v. St. Paul Surplus Lines Ins. Co.,* 753 F.2d 1288, 1291-92 (4th Cir.1985); *Nationwide Mut. Ins. Co. v. State Farm Mut. Auto Ins. Co.,* 209 F.Supp. 83, 90 (N.D.W.Va.1962)—the "minority" rule—accurately allocates liability according to the cost of the burden each insurer contracts to carry.

Some courts have attempted to resolve this dilemma by apportioning liability based upon the premiums received, on the theory that that more accurately measures the amount of risk assumed. *See, e.g., Ins. Co. of Texas v. Employers Liability Assur. Corp.,* 163 F.Supp. 143, 147 (S.D.Cal.1958). However, this approach proved "unworkable and gained no adherents, even being abandoned in the states" which initially toyed with the idea. 8A J. Appleman & J. Appleman, *supra,* § 4906 at 346. Because insurance policies cover different *types* of risk as well as different amounts, premium charges cannot rationally be compared.

■ Thus, unfortunately, no method of apportioning liability is entirely satisfactory. However, because we must apply the law of Connecticut, we do not write on a blank slate. In *Sacharko v. Center Equities Ltd. Partnership,* 2 Conn.App. 439, 479 A.2d 1219, 1224 (1984), the Connecticut Court of Appeals held, "[w]here two policies contemplate the particular risk equally, liability will be prorated based on the total policy limits." We see no reason why we should not follow *Sacharko* as the law of Connecticut. Accordingly, we apportion

liability on the basis of policy limits—Aetna paying 2/7 and Continental liable for the remaining 5/7.

Remanded with instructions to apportion liability 2/7 for Aetna and 5/7 for Continental.