**RLI INSURANCE CO.,**
Plaintiff–Appellee,

v.

**HARTFORD ACCIDENT AND INDEMNITY COMPANY,**
Defendant–Appellant.

**No. 73, Docket 92–7308.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 16, 1992.

Decided Nov. 19, 1992.

William I. Garfinkle, Waterbury, Conn. (Carmody & Torrance, Waterbury, Conn., on the brief), for plaintiff-appellee.

Paul E. Pollock, Bridgeport, Conn. (Arnold J. Bai, Andrew S. Turret, Bai, Pollock & Dunnigan, Bridgeport, Conn., on the brief), for defendant-appellant.

Before: OAKES, KEARSE, and PRATT, Circuit Judges.

KEARSE, Circuit Judge.

Defendant Hartford Accident and Indemnity Company ("Hartford") appeals from a final judgment of the United States District Court for the District of Connecticut, Peter C. Dorsey, *Judge*, in favor of plaintiff RLI Insurance Company ("RLI") on RLI's claim that Hartford should be compelled to contribute to the expenses of defending and indemnifying their common insured. The district court granted summary judgment in favor of RLI on the ground that clauses in the two policies, each describing the insurance coverage as "excess," offset each other, making both insurers liable for contribution toward those expenses in proportion to the limits of their respective coverage. On appeal, Hartford contends that it was entitled to judgment in its favor because of, *inter alia*, the inclusion in its policy of a clause, unparalleled in the policy issued by RLI, stating that the insurance provided by Hartford was not to contribute with insurance provided by another carrier. Under the present status of Connecticut law, which the parties agree governs this diversity action, we agree with Hartford and reverse the judgment of the district court.

## I. BACKGROUND

The present controversy concerns the insurance coverage provided by RLI and Hartford for Dr. Sulaiman Marikar, now deceased, and his estate (collectively "Marikar"). The material facts are not in dispute. Dr. Marikar, who at the pertinent times was on the staff of Manchester Memorial Hospital ("Hospital"), had a professional liability insurance policy issued by RLI as underwriter for the American Psychiatric Association, of which he was a member. In 1986, the Hospital, by means of an endorsement to its own professional liability insurance policy, obtained insurance for members of its staff, issued·by Hartford.

Each company's policy included an "other insurance" clause. The RLI clause read as follows:

Other Insurance.—Coverage provided to a Participating Member under this Insurance Agreement shall be excess insurance over any other valid and collectible insurance covering any individual, partnership or corporation listed on the Evidence of Participation. In the absence of other applicable and collectible insurance, this insurance shall be primary under the provisions of coverage.

The "other insurance" clause in the pertinent endorsement to the Hartford policy stated as follows:

It is agreed that the "Persons Insured" provision is amended to include as an insured each physician, surgeon and dentist employed by the named insured and designated in the Schedule of this endorsement, ... subject to the following provisions: ... 3. The insurance afforded by this endorsement shall be excess over any other valid and collectible insurance available to the insured and shall not, in any event, contribute with such other insurance.

In 1987, a malpractice action was brought against Dr. Marikar. RLI defended and settled the action; Hartford denied any responsibility to defend or indemnify. RLI commenced the present action against Hartford, seeking a declaration that the parties were to contribute to Marikar's defense and indemnification in proportion to their policy limits. Hartford counterclaimed for a declaration that it was not required to make any payment unless and until RLI's coverage had been exhausted. On the basis of these facts, both sides moved for summary judgment.

The district court granted RLI's motion and denied that of Hartford. It ruled that the companies' "other insurance" clauses canceled each other out. It declined to give effect to the clause in Hartford's policy purporting to preclude contribution, stating in part as follows:

With two policies claiming an excess position and the clauses to that effect thus being disregarded, so also must the rein-

forcement. Contribution has been the method by which courts, faced with contradictory nullifying "other insurance" clauses, have resolved insurers' conflicting claims by holding both policies to be equal and primary and requiring contribution on some basis. The Hartford's effort to vitiate a method of resolving the dispute must also be treated as a nullity. It should have no greater effect than the first part of the "other insurance" clause. It should be held to be a nullity in order to preserve the insurance contracted for.

Ruling on Pending Motions dated February 20, 1992 ("Ruling"), at 4–5. The court described its conclusion as

in keeping with the ruling that ranking these policies "would serve to encourage insurance companies to compete endlessly for the ultimate language to be used in excess clauses" for no good reason. *Continental Cas[ualty Co. v. Aetna Casualty & Surety Co.*, 823 F.2d 708, 711 (2d Cir.1987)]. Thus, where "each insurer has attempted to make his coverage 'excess' ... [t]he court ... will require the insurers, in the ordinary instance, to prorate the loss." *Id.* at 711.... As there is no showing here that the two policies were written with other than equal contemplation of the particular risk, Connecticut would prorate the insurers' liability and thus mandate contribution.... It follows that the Hartford's contribution disclaimer flies in the face of Connecticut law.

Ruling at 5.

Judgment was entered in favor of RLI, and this appeal followed.

## II. DISCUSSION

On appeal, Hartford contends that the district court erred in failing to give effect to the special noncontribution language of its "other insurance" clause and to language in the RLI "other insurance" clause allowing the RLI coverage to be primary. For the reasons below, we conclude that Hartford's arguments have merit in light of the present status of Connecticut law.

As a general matter, if the language of a contract is clear and unambiguous, the contract is to be given effect in accordance with its terms. *Barnard v. Barnard*, 214 Conn. 99, 110, 570 A.2d 690, 696 (1990). Under Connecticut law, an insurance policy, like any other contract, is to be given a reasonable interpretation, and the words used are generally to be accorded their ordinary and customary meaning. *See, e.g., Gottesman v. Aetna Insurance Co.*, 177 Conn. 631, 634, 418 A.2d 944, 946 (1979).

An insurance company may write a policy that provides that its coverage is not applicable if the insured has other insurance that provides coverage. However, if an insured is covered by policies issued by two insurers and each policy contains such an "other insurance" clause, there is a danger that each insurer may invoke its clause in an attempt to deny all responsibility for coverage. In Connecticut, such "other insurance" clauses "are valid for the purpose of establishing the order of coverage between insurers" and therefore are enforceable, but only "as long as their enforcement does not compromise coverage for the insured." *Aetna Casualty & Surety Co. v. CNA Insurance Co.*, 221 Conn. 779, 783, 606 A.2d 990, 992 (1992) (sometimes *"Aetna/CNA"*).

When two such "other insurance" clauses are identical, the courts of New York, which appear to have confronted the issue of competing "other insurance" clauses with greater frequency than have the courts of Connecticut, have established the general principle that insurers enjoy an "equitable right to contribution, where there is concurrent insurance," *Travelers Insurance Co. v. General Accident, Fire & Life Assurance Corp.*, 28 N.Y.2d 458, 463, 322 N.Y.S.2d 704, 706, 271 N.E.2d 542, 544 (1971), and that where each of the policies covering the risk "generally purports to be excess to the other, the excess coverage clauses are held to cancel out each other and each insurer contributes in proportion to its limit amount of insurance...." *Lumbermens Mutual Casualty Co. v. Allstate Insurance Co.*, 51

N.Y.2d 651, 655, 435 N.Y.S.2d 953, 955, 417 N.E.2d 66, 68 (1980); *accord State Farm Fire & Casualty Co. v. LiMauro*, 65 N.Y.2d 369, 373–74, 492 N.Y.S.2d 534, 538, 482 N.E.2d 13, 17 (1985). *See also Sacharko v. Center Equities Limited Partnership*, 2 Conn.App. 439, 447, 479 A.2d 1219, 1224 (1984) ("Where two policies contemplate the particular risk equally, liability will be prorated based on the total policy limits."). The general principle of ratable contribution is not applicable, however, if it "would effectively deny and clearly distort the plain meaning of the terms of the policies." *Lumbermens Mutual Casualty Co. v. Allstate Insurance Co.*, 51 N.Y.2d at 655, 435 N.Y.S.2d at 955, 417 N.E.2d at 68. *See generally United States Fire Insurance Co. v. Federal Insurance Co.*, 858 F.2d 882, 885–87 (2d Cir.1988), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1744, 104 L.Ed.2d 181 (1989).

In the present case, the district court ruled that Connecticut law required contribution because there was no showing that the two policies were written with other than "equal contemplation of the particular risk," Ruling at 5, and because Hartford's noncontribution language constituted simply an "effort to vitiate [the contribution] method of resolving the dispute," *id.* at 4. Relying in part on *Continental Casualty Co. v. Aetna Casualty & Surety Co.*, 823 F.2d 708 (2d Cir.1987) (*"Continental Casualty"*), which was governed by Connecticut law, the district court concluded that "Hartford's contribution disclaimer flies in the face of Connecticut law." Ruling at 5. In *Continental Casualty*, we had upheld a district court ruling that two companies issuing excess/umbrella policies should contribute ratably to the loss despite the fact that the pertinent language of one of the policies was more explicit than that in the other. Our rationale was that a denial of contribution on the basis of the more explicit language would merely result in other insurers adopting identical or even more restrictive language:

> Nor does the fact that Aetna's "other insurance" clause more explicitly describes the scope of its liability alter our conclusion. We agree with Judge Clarie

that ranking policies in this manner "would serve to encourage insurance companies to compete endlessly for the ultimate language to be used in excess clauses," for no good reason.

823 F.2d at 711. The ruling of the district court in the present case was thus consistent with the public policy concerns found dispositive in *Continental Casualty*.

■ In deciding an appeal, however, we apply the law as it exists at the time of our ruling, *see, e.g., Bradley v. School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); *Hegger v. Green*, 646 F.2d 22, 26 (2d Cir.1981), and a short time after the district court's decision, the Supreme Court of Connecticut, in *Aetna/CNA*, made clear that there is no state policy such as that invoked in *Continental Casualty*, prohibiting insurers from attempting to specify in their policies the order in which they are to be required to provide indemnification. After stating the general contract interpretation principles reflected in cases such as *Barnard v. Barnard* and *Gottesman v. Aetna Insurance Co.*, the *Aetna/CNA* court ruled that in Connecticut, so long as there is no denial or diminution of coverage for the insured, language by which an insurer seeks to establish its coverage as excess to that provided by another insurer should be given effect in accordance with its plain meaning. Reversing a lower court's order requiring contribution, the *Aetna/CNA* court stated in part as follows:

> Public policy is not violated when "other insurance" clauses are used for the purpose of establishing the order of payment between insurers. When the insured is afforded full indemnification for a loss, there is no public policy issue controlling how insurers divide coverage among themselves....
>
> ... [I]f a careful reading of the language of the [insurance] policies in their entirety reconciles any conflict or ambiguity that may arise when identical or similar "other insurance" clauses exist, and if the enforcement of the clauses would not produce adverse consequences

for the insured, then the clauses should be enforced as written.

*Aetna Casualty & Surety Co. v. CNA Insurance Co.*, 221 Conn. at 785, 606 A.2d at 993. Thus, so long as the insured is not disadvantaged, the court is to give effect to all of the language of both policies as written; the notion that unduplicated language in one policy's "other insurance" clause, expressly intended to avoid contribution, should have no greater effect than standard language that is duplicated in a competing policy is not an accurate reflection of Connecticut law. Such language differences are to be accorded their reasonable meanings and may be given effect without offending Connecticut law or public policy.

■ In the present case, there were two significant differences between the "other insurance" clause in the RLI policy and that in the Hartford endorsement. First, the RLI clause stated that "[i]n the absence of other applicable and collectible insurance, this insurance shall be primary under the provisions of coverage"; the endorsement to the Hartford policy, which provided coverage for Hospital staff members such as Dr. Marikar, did not state that its coverage would ever be primary. Second, Hartford's endorsement coverage of Hospital staff members was provided "subject to" several provisions, including its "other insurance" clause that stated that Hartford's insurance "shall not, in any event, contribute with" other valid and collectible insurance; the RLI "other insurance" clause contained no such reservation. Comparison of the language of the two policies therefore reveals that Hartford included explicit language to avoid being compelled to contribute with another insurer, and that RLI agreed to provide primary coverage if no other insurance was collectible. Under the framework established by *Aetna/CNA*, the plain language of the policies permits the "other insurance" clauses to be reconciled without prejudice to the insured, by rejecting RLI's attempt to compel Hartford to contribute to the defense and indemnification provided by RLI.

In opposition to Hartford's arguments on this appeal, RLI has suggested that the premium exacted by Hartford for the endorsement covering Hospital staff members was sufficiently large to imply that Hartford did not really envision its coverage to be excess. *See, e.g., United States Fire Insurance Co. v. Federal Insurance Co.*, 858 F.2d at 885 ("premium size may be an important factor in determining priority of coverage"). This argument suffers two flaws. First, RLI did not adduce facts to support it. Though in its memorandum of law in the district court RLI argued that Hartford's premium was "substantial" and thus indicated that Hartford did not regard its policy as an "umbrella" policy, RLI presented no evidence as to the size of the premium for the Hartford endorsement at issue here or as to the number of persons covered by that endorsement. Thus, the record does not reveal the size of the Hartford premium as compared to the RLI premium. More importantly, we are unpersuaded that relative premium size is material in the present case, given the clear language differences between the policies. The Connecticut Supreme Court in *Aetna/CNA*, in determining that one policy provided coverage excess to that provided by the other, relied on the "plain language of the policies," 221 Conn. at 787 n. 6, 606 A.2d at 994 n. 6, and made no mention whatever of premium levels.

In sum, giving effect to the differences in policy language, we conclude that Hartford is entitled to judgment dismissing RLI's complaint and declaring that Hartford has no duty to contribute to the defense or indemnification of Marikar.

## CONCLUSION

For the foregoing reasons, we reverse the judgment in favor of RLI and direct that judgment be entered in favor of Hartford.