Aetna Casualty and Surety Company *v.* CNA Insurance Company et al. (14376)

Peters, C. J., Shea, Callahan, Covello and Berdon, Js.

Argued December 12, 1991—decision released April 28, 1992

*Jon S. Berk,* with whom, on the brief, was *Andrew J. Hern,* for the appellant (named defendant).

*Herbert J. Shepardson,* with whom, on the brief, were *Lorinda S. Coon* and *John M. Watkins,* for the appellee (plaintiff).

*Kerin M. Woods,* for the appellee (defendant Marianne O'Neill).

BERDON, J. The sole issue in this appeal concerns the validity of "other insurance" clauses that are used to

determine the order of the obligation to provide coverage between insurers furnishing underinsured motorist coverage to a claimant.[1] The defendant insurer, CNA Insurance Company (CNA), appealed from the trial court's decision invalidating the "other insurance" clauses in policies issued by CNA and by the plaintiff insurer, Aetna Casualty and Surety Company (Aetna), and treating both CNA and Aetna as the primary insurers of the claimant, Marianne O'Neill. We transferred the appeal to this court from the Appellate Court in accordance with Practice Book § 4023, and now reverse the trial court's judgment.

The following facts are not in dispute. On April 6, 1986, the claimant was seriously injured when the vehicle she was driving collided with a vehicle owned and operated by Raymond Petronis. The claimant's vehicle was owned by her father, Eugene O'Neill, and insured by Aetna. At the time of the incident, the claimant was residing with her sister and brother-in-law, Catherine and Joseph Jazwicz. The Jazwiczes were the named insureds under the CNA automobile policy.

Petronis had liability insurance on his vehicle through American Universal, which paid the policy limit of $100,000 to the claimant. The claimant then brought claims under the underinsured motorist provisions policy issued by Aetna, the insurer of the claimant as the operator of the covered vehicle, and the policy issued by CNA, the insurer of the claimant as a resident relative of the Jazwiczes. Both the Aetna and the CNA policies contained identical "other insurance"

[1] We have long held that if " 'a claim is made against an insured's uninsured motorist coverage after it is determined that the at-fault party is underinsured, the [statutes and] regulations which apply to uninsured motorist coverage must equally apply to underinsured motorist coverage.' " *General Accident Ins. Co.* v. *Wheeler,* 221 Conn. 206, 210–11, 603 A.2d 385 (1992), quoting *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 399–400, 446 A.2d 1059 (1982).

clauses that provided: "If there is other applicable similar insurance, we will not pay for any damages which would duplicate any payment made for damages under such similar insurance. However, any insurance we provide with respect to a vehicle you do not own, to which other similar insurance is applicable, shall be excess over such other applicable insurance."

Pursuant to the terms of the policies, the claims went to arbitration and the parties stipulated to the following: (1) the claimant was covered under both the Aetna and CNA policies; (2) at the time of the accident, the Aetna policy provided a total of $300,000 of underinsured motorist coverage, and the CNA policy provided underinsured motorist coverage for two vehicles in the amount of $300,000 each, for a total of $600,000 of underinsured motorist coverage; and (3) there was a credit of $100,000 from the tortfeasor's payment. The arbitration panel found that the claimant had suffered damages in the amount of $400,000 and awarded her $300,000 pursuant to the underinsured motorist coverage. The arbitration panel concluded that the insurer providing coverage on the vehicle involved in the accident was primary, and that the insurer providing coverage as a result of the claimant being a resident relative of the named insureds' household was excess. The panel, therefore, concluded that Aetna's coverage should be exhausted before CNA would be obligated to pay underinsured motorist benefits. After giving Aetna the full $100,000 credit for the payment by the tortfeasor, the panel ordered Aetna to pay the first $200,000 of underinsured motorist coverage and CNA to pay the additional $100,000.

Aetna filed a motion in the Superior Court to vacate the award and the claimant filed a motion to confirm the award, which were consolidated and heard jointly by the trial court. The court concluded that because the "other insurance" clauses in both the Aetna and the

CNA policies were in conflict, it would treat both insurers as primary and prorate the amount of the benefits between them according to their limits of liability. The court then ordered Aetna to pay $85,714.28 to the claimant and CNA to pay the claimant $214,285.72.[2]

On appeal, CNA claims that the court erred in not finding that the Aetna policy was primary and that the CNA policy was excess in providing underinsured motorist benefits to the claimant. The issue of the validity of "other insurance" clauses for the purpose of determining the priority of payment between insurers is one of first impression in this court. We conclude that "other insurance" clauses are valid for the purpose of establishing the order of coverage between insurers, as long as their enforcement does not compromise coverage for the insured. A careful reading of the Aetna and the CNA policies in their entirety reconciles any possible conflict and establishes that the Aetna policy provides primary coverage while the CNA policy provides excess coverage to the claimant. Accordingly, we reverse the judgment of the trial court.

At the outset, we note that the original reason for "other insurance" clauses was to prevent overinsurance and double recovery under fire and property insurance policies. Since, however, "there is less temptation to deliberately and fraudulently overinsure against automobile liability, these other insurance clauses function solely to reduce or eliminate the insurer's loss in the event of concurrent coverage of the same risk."

[2] Although the trial court does not explain its mathematical calculations, we assume that it gave to each insurer a full credit of $100,000, which represented the payment from the tortfeasor. The credit reduced Aetna's total underinsured motorist coverage to $200,000 and CNA's total underinsured motorist coverage to $500,000, for a total coverage of $700,000 available to the claimant. The court then prorated the available coverage between the insurers and ordered Aetna to pay two-sevenths of the loss, or $85,714.28, and CNA to pay five-sevenths of the loss, or $214,285.72.

(Internal quotation marks omitted.) *Werley* v. *United Services Automobile Assn.*, 498 P.2d 112, 117 (Alaska 1972).[3]

Aetna contends that in *Pecker* v. *Aetna Casualty & Surety Co.*, 171 Conn. 443, 453, 370 A.2d 1006 (1976), this court invalidated "other insurance" clauses in uninsured motorist provisions for all purposes. Aetna has misinterpreted our holding. In *Pecker*, the issue before us was whether such a clause was enforceable to prevent the insured from stacking multiple uninsured motorist coverages in cases in which the claimant had not been wholly indemnified for his damages. We held that when a claimant's damages exceed the uninsured motorist coverage available against any one policy, resulting in only partial indemnification for the claimant, "other insurance" clauses are invalid to prohibit the claimant from stacking coverages. The cornerstone of our holding in *Pecker* was the public policy behind the enactment of the uninsured motorist statutes and regulations affording an insured full indemnification for the injuries suffered. Id., 448–51; see also *Allstate Ins. Co.* v. *Ferrante*, 201 Conn. 478, 482, 518 A.2d 373 (1986) ("we have repeatedly held that General Statutes § 38-175c permits an injured claimant to 'stack' coverages").[4]

---

[3] There are three types of "other insurance" clauses for underinsured motorist coverage: (1) excess; (2) pro rata; and (3) escape. An "excess insurance" clause, such as the one employed by the parties in the present appeal, provides that, if there is other valid insurance covering the loss, the excess policy applies only if the claimant's loss exceeds the policy limits of the primary insurer. 8A J. & J. Appleman, Insurance Law and Practice (1981) § 4906, pp. 347–49. A "pro rata" other insurance clause provides that if there is other valid coverage, the insurer is liable only for its pro rata share of the loss, that is, the proportion that its policy limits bears to the total applicable policy limits. 8A J. & J. Appleman, supra, § 4906, pp. 345–46. An "escape" other insurance clause provides that the existence of other uninsured motorist coverage eliminates the insurer's liability to the claimant of that other insurance. 8A J. & J. Appleman, supra, § 4906, pp. 349–52.

[4] Moreover, in *Pecker* v. *Aetna Casualty & Surety Co.*, 171 Conn. 443, 452, 370 A.2d 1006 (1976), we stated: "By our holding that 'other insur-

The present appeal presents an entirely different scenario. Here, the "other insurance" clauses apportion underinsured motorist liability between insurers. Public policy is not violated when "other insurance" clauses are used for the purpose of establishing the order of payment between insurers. When the insured is afforded full indemnification for a loss, there is no public policy issue controlling how insurers divide coverage among themselves. See *Farmers Ins. Co.* v. *Prudential Property & Casualty Ins. Co.*, 10 Kan. App. 93, 97–98, 692 P.2d 393 (1984); P. Morello, "The Problem of Multiple Uninsured Motorist Coverages: Who Pays?" 62 Conn. B.J. 358, 364 (1988).

We conclude, therefore, that if a careful reading of the language of the policies in their entirety reconciles any conflict or ambiguity that may arise when identical or similar "other insurance" clauses exist, and if the enforcement of the clauses would not produce adverse consequences for the insured, then the clauses should be enforced as written. See R. Keeton, Insurance Law (1971) § 3.11 (b), p. 173; see also *Farmers Ins. Co.* v. *Prudential Property & Casualty Ins. Co.*, supra, 396 (" ' "Other insurance" excess coverage clauses do not seek to dilute, condition or limit statutorily mandated coverage. Rather, they seek only to establish priority as to which policy should be exhausted first in satisfying the liability. . . . We see no public policy question in how insurance companies divide among themselves the loss occasioned by their communal insured.' "); *State Farm Mutual Automobile Ins. Co.* v. *United Services Automobile Assn.*, 211 Va. 133, 137–38, 176 S.E.2d 327 (1970) ("We see nothing in the excess coverage clause involved herein which adds to or restricts the uninsured motorist stat-

ance' clauses included in uninsured motorist coverage provisions are invalid, we do not intend to abrogate the rule that an insured may not recover double payment of damages under overlapping insurance coverage."

ute. . . . The excess coverage clause merely provides an orderly process for determining the distribution of liability among several insurance carriers.").

We begin our review of the "other insurance" provisions in the Aetna and CNA policies by noting that "[t]he rule in Connecticut is that an insurance policy, like any other contract, must be given a reasonable interpretation and the words used are to be given their common, ordinary and customary meaning. *Gottesman* v. *Aetna Ins. Co.,* 177 Conn. 631, 634, 418 A.2d 944 (1979); *Lyon* v. *Aetna Casualty & Surety Co.,* 140 Conn. 304, 307, 99 A.2d 141 (1953)." *Izzo* v. *Colonial Penn Ins. Co.,* 203 Conn. 305, 309, 524 A.2d 641 (1987). The general rules of contract construction, therefore, apply when construing the terms of an insurance policy. "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." *Barnard* v. *Barnard,* 214 Conn. 99, 110, 570 A.2d 690 (1990).

In construing the language of the policies, we start with the stipulation that the claimant was covered under both policies. Indeed, the definitions within the provisions make this clear. Both policies define a "covered person" in their uninsured motorist provisions as, inter alia: "1. You or any family member. 2. Any other person occupying your covered auto." Therefore, Aetna provided underinsured motorist coverage to the claimant as a "covered person" because she was occupying a vehicle owned by the named insured, Eugene O'Neill, and CNA provided underinsured motorist coverage to the claimant because she was a family member who was residing in the household of the named insureds, Catherine and Joseph Jazwicz.[5]

---

[5] The CNA policy defines "family member" as, inter alia, "a person related to you by blood, marriage or adoption *who is a resident of your household.*" (Emphasis added.)

The essential language to be construed in the policies is "[a]ny insurance we provide with respect to *a vehicle you do not own,* to which other similar insurance is applicable, shall be excess over such other applicable insurance." (Emphasis added.) It is clear that both Aetna and CNA contemplated in their respective "other insurance" clauses that the policy issued by each would be excess in situations where the covered person was injured in a vehicle "you" do not own. In order to determine to whom the word "you" in each clause refers, we consult the definition of that word within the policies. Both policies provide: "Throughout this policy, 'you' and 'your' refer to: 1. The 'named insured' shown in the Declarations; and 2. The spouse if a resident of the same household."

Accordingly, the Aetna policy, by its own terms, does not envision being excess in this situation because the claimant was injured while occupying a vehicle owned by Eugene O'Neill, the named insured in the Aetna policy. Therefore, the Aetna policy is primary and its "other insurance" clause does not apply. Conversely, the CNA policy is excess because the claimant was *not* injured while an occupant in a vehicle owned by the Jazwiczes, the named insureds in the CNA policy. The only reason CNA is providing underinsured motorist coverage is because the claimant is a resident relative of the named insureds, and thus, a covered person under the CNA policy. We find no conflict between the policies because only one insurer, Aetna, could be primary. The policies themselves, therefore, dictate that we hold that the Aetna underinsured motorist coverage be primary and that the CNA underinsured motorist coverage be excess.[6]

---

[6] We base our holding today upon the plain language of the policies; *Barnard* v. *Barnard,* 214 Conn. 99, 110, 570 A.2d 690 (1990); requiring the insurer of the vehicle to provide the primary coverage to the claimant, and not on the basis of any fictitious doctrine that insurance coverage "follows the vehicle." See *Allstate Ins. Co.* v. *Ferrante,* 201 Conn. 478, 486, 518 A.2d 373 (1986); *Harvey* v. *Travelers Indemnity Co.,* 188 Conn. 245, 248, 449 A.2d 157 (1982).

The judgment is reversed and the case is remanded with direction to reinstate the award of the arbitration panel and to render judgment accordingly.

In this opinion the other justices concurred.