**Marjorie BLEVIO, Administratrix, Plaintiff,**

v.

**AETNA CASUALTY & SURETY COMPANY and Royal Insurance Company of America, Inc., Defendants.**

Civ. A. No. 93–11288–Y.

United States District Court,
D. Massachusetts.

Dec. 31, 1993.

---

Doris R. MacKenzie Ehrens, Murphy, Lamere & Murphy, P.C., Braintree, MA.

Richard W. Murphy, Murphy, Lamere & Murphy, P.C., Braintree, MA.

Kevin Truland, Gallagher & Gallagher, P.C., Boston, MA.

## MEMORANDUM AND ORDER FOR CERTIFICATION

YOUNG, District Judge.

This declaratory judgment action is brought by Mrs. Marjorie Blevio ("Blevio"), as administratrix of the estate of her thirteen-year-old son Noah Blevio, against Aetna Casualty & Surety Company ("Aetna") and Royal Insurance Company of America, Inc. ("Royal"), to determine the rights and liabilities of the parties under two motor vehicle underinsurance policies.

The material facts are undisputed. Noah Blevio died August 9, 1991, from fatal injuries sustained when he was hit by a pickup truck on June 30, 1991. The limits of the insurance liability payments available from the tortfeasor total $200,000 and this amount has been offered. In addition, Noah had underinsured motorist coverage up to $500,-000 under his father's Aetna business policy and up to $300,000 under his brother's Royal policy. There is no dispute that, while an aggregate of $800,000 underinsured motorist coverage is available, both Aetna and Royal each claim entitlement to deduct the tortfeasor's $200,000 liability payment to give full effect to their separate underinsurance setoff provisions, thereby reducing the aggregate underinsurance coverage by $400,000. Blevio argues that Aetna and Royal can only share one setoff equal to the amount that Blevio will actually collect from the tortfeasor. Despite the contention of Aetna and Royal that each insurance contract must be given full effect independently, the Court rules that Connecticut public policy requires that the allowable deduction be pro-rated between the two insurers equally entitled to claim them.

Both parties agree that Connecticut law applies in this diversity action as both policies are Connecticut policies issued in Connecticut to Connecticut residents by insurers doing business in Connecticut.[1]

---

1. Blevio is a Massachusetts resident.

*Avemco Ins. Co. v. Aero-tech, Ltd.*, 677 F.Supp. 35, 38 (D.Mass.1987); *Hart v. State Farm Mut. Auto. Ins. Co.*, 313 F.Supp. 289, 292 (D.Mass.1970). No Connecticut appellate court, however, has directly addressed the issue at bar. This Court thus looks to the decisions of the Connecticut Superior Court. *See Wood v. General Motors Corp.*, 673 F.Supp. 1108, 1121 (D.Mass.1987), *rev'd on other grounds*, 865 F.2d 395 (1st Cir. 1988), *cert. denied*, 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 782 (1990). The two Connecticut Superior Court decisions on point split on this very issue, however, so this Court is left to predict what the Supreme Court of Connecticut will rule when it eventually confronts this issue. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967).

The earlier case, *Allstate Insurance Co. v. Link*, No. CIV.A. 92–296518, 1992 WL 369549 (Conn.Super.Ct. Dec. 3, 1992), concluded that the two applicable underinsured motorist policies were each entitled to a reduction of the same $100,000 liability insurance payment the tortfeasor could offer. The court reasoned that each policy's tortfeasor-credit provision was "in conformance with General Statutes § 38a–336(b) and Insurance Department Regulations § 38–175a–6(d)(1) [now § 38a–334–6(d)(1) ]" and this provision should be given effect as to both policies.[2] Allstate's total potential liability on its two policies was thus reduced by $200,000.

More recently, in *Dunlop v. Government Employees Ins. Co.*, Nos. CIV.A. 322973, 338304, 1993 WL 34533 (Conn.Super.Ct. Feb. 2, 1993), the Superior Court noted on similar facts that "[t]o allow both [underinsured motorist] insurers to deduct in full the same $100,000 payment[s] ... would be to allow $400,000 in reductions for only $200,000 of receipts." The court went on to reason that since section 38–175a–6(d)(1) [now § 38a–334–6(d)(1) ] of the Regulations of Connecticut State Agencies does not allow the limits of an insurer's liability to be reduced by amounts greater than the amounts "paid" to the claimant, it is consonant with the regulations to pro-rate the allowable reductions between the two insurers equally entitled to them.[3] This gives at least partial effect to the intent of both insurers without compromising coverage for the insured.[4] *Dunlop*, at *4.

Aetna and Royal argue that since their respective setoff provisions for the reduction of damages are explicitly authorized by the applicable Connecticut insurance reg-

**2.** The court cited *Aetna Casualty & Surety Co. v. CNA Insurance Co.*, 221 Conn. 779, 783 n. 2, 606 A.2d 990, 992 n. 2 (1992) for support, but, as Blevio has pointed out, the court's reliance on footnote 2 in this decision is misplaced. The Connecticut Supreme Court in footnote 2 only stated that "[a]lthough the trial court [did] not explain its mathematical calculations," the Supreme Court assumed from the trial court's award that the trial court had given each of the two underinsured motorist insurers a full credit of the $100,000 to be paid by the tortfeasor. The Supreme Court then went on to reverse the trial court's decision and reinstated the arbitration panel's award which gave the primary insurer the full credit for the payment by the tortfeasor and the excess insurer nothing without discussion of the issue presented here. *Id.* at 782, 788, 606 A.2d at 991, 994. The amount of the setoff was not directly at issue in *Aetna* because the insured received $300,000 in total under-insured motorist coverage payments regardless of the method of calculation since her damages did not exceed the $900,000 aggregated underinsured motorist coverage, even if both insurers were allowed the $100,000 setoff. The amount of potential·damages here, on the other hand, although not for this Court to decide, could very

well exceed the aggregated underinsured motorist coverage even without a setoff.

**3.** Section 38a–334–6(d)(1) of the Regulations of Connecticut State Agencies states in relevant part: "(d) Limits of liability: ... the policy may provide for the reduction of limits to the extent that damages have been (1) paid by or on behalf of any person responsible for the injury...."

**4.** To the extent the *Dunlop* court was guided by the rationale of *Georgia Farm Bureau Mutual Ins. Co. v. State Farm Mutual Automobile Ins. Co.*, 173 Ga.App. 844, 328 S.E.2d 737 (1985), which has been reversed, *Georgia Farm Bureau Mutual Ins. Co. v. State Farm Mutual Automobile Ins. Co.*, 255 Ga. 166, 336 S.E.2d 237 (1985), its logic is unaffected. While the reversed Georgia appellate decision had prorated the setoff between both underinsured motorist insurers, it was undisputed in that case that the first insurer, subsequently awarded the whole setoff by the Georgia Supreme Court, provided primary underinsured motorist coverage, while the second insurer provided excess coverage. *See infra* note 6. The rationale is still sound in the case at bar where both insurers are excess and neither one is more entitled to the setoff than the other.

ulation they should be given full effect as to each policy independently. *See Link,* at \*1; Conn.Agencies Regs. § 38a–334–6(d)(1) (1993). Neither the respective policy language nor section 38a–334–6(d)(1) of the regulations, however, addresses setoffs in the specific situation of multiple underinsured motorist coverages. Aetna and Royal, moreover, candidly recognize that under Connecticut law any ambiguous insurance contract language will be construed in favor of insurance coverage, *Schultz v. Hartford Fire Ins. Co.,* 213 Conn. 696, 702, 569 A.2d 1131, 1134 (1990), and that even clear and unambiguous policy provisions will not be enforced if against the public policy of the uninsured motorist statutes and regulations.[5] *Id.; Pecker v. Aetna Casualty & Sur. Co.,* 171 Conn. 443, 452, 370 A.2d 1006, 1010 (1976) ("other insurance" clauses were invalid when applied to prohibit claimant from stacking underinsured motorist coverages).

■ The Connecticut Supreme Court has had several occasions to discuss the public policy behind Connecticut's uninsured and underinsured statutes. In *American Motorists Insurance Co. v. Gould,* 213 Conn. 625, 632, 569 A.2d 1105, 1110 (1990), the court noted:

> Courts construing statutes like § 38–175c [now § 38a–334] that compare uninsured motorist coverage limits with tortfeasor liability limits have generally held that the legislative objective was simply to give an insured who is injured in an accident the same resource he would have had if the tortfeasor had carried liability insurance equal to the amount of the insured's uninsured motorist coverage.

In *Aetna Casualty & Surety Co. v. CNA Insurance Co.,* 221 Conn. 779, 606 A.2d 990 (1992), the court further stated that "the public policy behind the enactment of the uninsured motorist statutes and regulations [is to afford] an insured *full indemnification* for the injuries suffered," 221 Conn. at 784, 606 A.2d at 992 (emphasis added) ("other

insurance" clauses valid for establishing the order of coverage between multiple underinsured motorist coverages "as long as their enforcement does not compromise coverage for the insured"). One can thus surmise that, pursuant to Connecticut's public policy, the Connecticut Supreme Court will also protect an injured insured's right to full indemnification where there are multiple sources of under-insured motorist coverage with setoff provisions. *See also Connolly v. Royal Globe Ins. Co.,* 455 A.2d 932, 935–36 n. 1 (Me.1983) (since the purpose of underinsured motorist statutes is "to permit the insured injured party the same recovery which would have been available to him had the tortfeasor been insured to the same extent as the injured party" [quoted by the Connecticut Supreme Court in *American Motorists Insurance Co. v. Gould,* 213 Conn. at 631, 569 A.2d at 1109, *overruled in part on other grounds by Covenant Ins. Co. v. Coon,* 220 Conn. 30, 594 A.2d 977 (1991) ], the trial court "properly reduced the *aggregated* uninsured motorist coverage by the tortfeasor's liability coverage") (emphasis added).

Such an outcome is also consistent with the expectations of the insured. Connecticut recognizes that "within the reasonable expectations of the parties to the insurance contract" is the "common sense notion" that "an insured who 'pay[s] a double premium [can reasonably] expect double coverage....'" *Kent v. Middlesex Mut. Assurance Co.,* 226 Conn. 427, 432, 627 A.2d 1319, 1322–33 (1993) (citations omitted). Here, two separate premiums were paid for two different policies which both covered Noah Blevio as a member of a named insured's household. Since the Supreme Court has consistently "interpreted [the] uninsured motorist statute from the perspective of the person covered," *Covenant Ins. Co.,* 220 Conn. at 34 n. 5, 594 A.2d at 980 n. 5 (citations omitted), it would be anomalous to have the $200,000 liability payment deducted twice from the aggregated underinsured motorist coverage of the in-

---

5. The Connecticut Supreme Court has "held that statutory provisions applying to uninsured motorist policies apply equally to underinsured motorist situations." *Covenant Ins. Co. v. Coon,* 220 Conn. 30, 31 n. 3, 594 A.2d 977, 978 n. 3 (1991), *overruling in part on other grounds American*

*Motorists Ins. Co. v. Gould,* 213 Conn. 625, 628, 569 A.2d 1105, 1108 (1990). The Connecticut legislature made this explicit in its revisions to § 38a–336, effective January 1, 1994. 1993 Conn.Legis.Serv. 93–297 (West).

sured. The insured would lose $200,000 of coverage simply because the tortfeasor happened to have that amount of coverage. The recent revisions to § 38a–336 now more explicitly bar such an outcome.[6]

The $200,000 to be deducted from the aggregated under-insured motorist coverage should be allocated fairly between the insurers. If both are excess insurers, which they seem to be, their "other insurance" clauses conflict, and neither is enforceable. Thus both insurers are considered primary, and share the loss pro rata to the extent of its coverage (*i.e.,* Aetna with $500,000 coverage may take 5/8th or $125,000 of the setoff, and Royal with $300,000 coverage may take 3/8th or $75,000).[7] *See, e.g.,* Paul Morello, "The Problem of Multiple Uninsured Motorist Coverages: Who Pays?" 62 Conn.B.J. 358, 366 n. 44 (1988). Blevio is thus entitled to receive up to $375,000 from the Aetna policy and $225,000 from the Royal policy, depending on the total damages to be awarded in arbitration.

Blevio's Motion for Summary Judgment is allowed. The insurers' Cross–Motion for Summary Judgment is denied.

Since the controlling legal issue here is one of state law which is capable of repetition, not yet resolved by the Connecticut Supreme Court, as to which the decisions of the distinguished Connecticut Superior Court are divided, it is appropriate to certify the matter pursuant to 1985 Conn.Pub. Acts 85–111 for final resolution.

Accordingly, this Court certifies to the Supreme Court of Connecticut the following question of Connecticut law:

As of June 1, 1991, under the law of Connecticut, is it appropriate for each of two insurers providing underinsured motorist coverage to each set off in full the amount of the recovery from the tortfeasor?

The clerk is, therefore, directed to send a certified copy of this memorandum and order for certification, as well as a certified copy of the pleadings and insurance policies involved herein, to the Clerk of the Supreme Court of Connecticut. The case is ordered administratively closed pending the response from the Supreme Court of Connecticut.

---

6. Effective January 1, 1994, Connecticut General Statutes § 38a–336(d) now states "[t]he amount paid under the excess policies shall be apportioned in accordance with the proportion that the limits of each excess policy bear to the total limits of the excess policies." 1993 Conn.Legis.Serv. 93–297 (West).

7. If only one insurer had been primary, it probably would be entitled to the whole setoff, with the excess insurer paying the balance of damages up to its limits. *See Aetna Casualty & Sur. Co. v. CNA,* 221 Conn. 779, 606 A.2d 990 (1992) (reinstating such an award without discussion).