[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Matthew Zurlis initiated the present action against the defendant Safeco Insurance Company ("Safeco"), claiming that he is an insured under the policy of John Zurlis, his father, issued by the defendant Safeco. The plaintiff further alleged that he was injured in an automobile-accident caused solely by the negligence of another party, and that he settled his claim against the culpable party for the limits of the culpable party's insurance. Plaintiff now claims that he is entitled to underinsured benefits under his father's insurance policy with Safeco, by virtue of the plaintiff's alleged residency at his father's house.
As framed by the pleadings and the stipulation of the parties, this case presents the following two narrow issues: CT Page 11304
1. Is the plaintiff a covered person as defined in the policy of John Zurlis, issued by defendant Safeco, thus entitling the plaintiff to benefits thereunder?
2. If the plaintiff is a covered person under the policy, what are the plaintiff's damages?
Both parties agree that the plaintiff is John Zurlis's son. Both parties agree that the policy defines "covered persons" as related persons residing at the insured's household. Accordingly, if the court finds that the plaintiff was residing at the insured's home, the plaintiff is entitled to benefits. In addition, both parties stipulate to the tortfeasor's liability and agree that if the plaintiff is entitled to recover under the policy, the defendant is entitled to a $16,066.67 credit representing the plaintiff's settlement with the tortfeasor.
The insured's policy with Safeco contains the following language:
 Covered person: . . . You or any family member injured in an auto accident: a. while occupying an auto . . .
 Family member: . . . Means a person related to you by blood, marriage or adoption, who is a resident of your household. It also means a ward or foster child who is a resident of your household.
In construing the language of an insurance policy
 "[t]he rule in Connecticut is that an insurance policy, like any other contract, must be given a reasonable interpretation and the words used are to be given their common, ordinary and customary meaning. Gottesman v. Aetna Ins. Co., 177 Conn. 631, 634, 418 A.2d 944 (1979); Lyon v. Aetna Casualty Surety Co., 140 Conn. 304, 307, 99 A.2d 141 (1953)." Izzo v. Colonial Penn Ins. Co., 203 Conn. 305, 309, 524 A.2d 641 (1987). The general rules of contract construction, therefore, apply when construing the terms of an insurance policy. "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." BarnardCT Page 11305 v. Barnard, 214 Conn. 99, 110, 570 A.2d 690 (1990).
Aetna Casualty Surety Co. v. CNA Insurance Co., 221 Conn. 779,786, 606 A.2d 990 (1992). In a similar context, the supreme court has occasioned to consider the phrase of an insurance policy providing coverage to a "resident of the same household" of the insured. The supreme court
 construed the unambiguous phrase "resident of the same household" in its common and ordinary sense as defined in Webster's Third New International Dictionary: "`those who dwell under the same roof and compose a family: a domestic establishment; specif: a social unit comprised of those living together in the same dwelling place.'" In accordance with the two primary elements that emerge from this definition, we consider . . . whether the facts were sufficient to establish that the [purported resident of the insured's] household had a close, family-type relationship with the inhabitants of that household, and, in addition, that he actually lived in the household.
(Citations omitted.) Middlesex Mutual Assurance Co. v. Walsh,218 Conn. 681, 686, 590 A.2d 957 (1991); see also Griffith v.Security Ins. Co., 167 Conn. 450, 454-57, 356 A.2d 94 (1975).
From the evidence adduced at a court trial, held on June 17, 1994, the court finds the following:
John Zurlis, the plaintiff's father ("insured"), lived on 16 Cynthia Street. He owned an insurance policy issued by the defendant covering relatives residing at the insured's home. The plaintiff Matthew Zurlis was 34 years at the time of the accident, September 14, 1991.
The plaintiff testified that some time prior to accident, he had moved out of his father's residence and rented an apartment with a friend, but several months before the accident the plaintiff had moved back to his parents' house due to lack of funds to pay rent and was residing at the parents' home at the time of the accident. This testimony was corroborated by the testimony of John Zurlis. In addition, Mrs. Zurlis testified that she had helped her son transfer his belongings from the plaintiff's apartment back to the family residence prior to the CT Page 11306 accident. The court credits the aforementioned testimony. In addition, the plaintiff testified that, although he had moved out occasionally after brief arguments with his parents, he testified that he always would eventually return to the parents' residence when he was able to "patch things up." (Transcript, p. 43.) Although the plaintiff conceded that he had moved out on several occasions in order to receive treatment for alcoholism, he testified that these stays were not permanent in nature and that he would return home after treatment. (Transcript, p. 45.) In addition, the parents testified that, even when their son had moved into the apartment, he ate all of his meals at home.
The defendant, in an attempt to challenge this testimony, submitted copies of the plaintiff's doctor bills received for treatment related to the injuries sustained in the accident. These bills list several addresses, such as the address of the plaintiff's prior roommate and the address of a halfway house at which the plaintiff received alcoholism treatment prior to the accident. The plaintiff, however, testified that he had the bills sent to different addresses in order to conceal the extent of his medical treatment from his mother. (Transcript, p. 43.) The court credit's the plaintiff's testimony. The defendant also submitted an affidavit (Defendant's Exhibit A) signed by the plaintiff, in which he averred that he was not covered by any insurance policy, including a family policy. The plaintiff, however, testified that he did not understand the intricacies of insurance coverage, and he believed the statement to mean that he did not personally have an insurance policy. (Transcript, p. 49.) The court finds this plausible.
After considering the evidence, the court finds that, based on determination of all the relevant factors, the plaintiff had a family type relationship with the inhabitants of the insured's household and the plaintiff actually lived there. MiddlesexMutual Assurance Co. v. Walsh, supra, 218 Conn. 686 (in determining household residency, court considers conglomeration of factors; such as the frequency of the purported resident's contact with household, frequency of overnight visits and meals consumed there, location where personal belongings kept and where mail received). Therefore, the court finds that at the time of the accident the plaintiff was a resident of the household of John Zurlis, the insured, and the plaintiff is, therefore, a covered person under the terms of the policy.
Although the plaintiff made conflicting statements to his CT Page 11307 doctor regarding his residency,
 [w]hile [the court has] found it relevant . . . that the [purported resident] had testified that he lived in a different place . . . [this does] not suggest that his intent as implied from his statements was dispositive evidence that he was not a resident of [the insured's] household. Rather, [the court] focus[s] primarily upon the objective factors . . ., including the frequency of the [purported resident's] contact with the inhabitants of [the insured's] household, that he stayed overnight and ate meals there, that he maintained a separate apartment and kept the bulk of his personal belongings, personal and business records and received mail at his apartment address, and that he used the address of his apartment for formal purposes such as voting, motor vehicle registration and paying income tax. . . . The ultimate determination as to whether the [purported resident] was a resident of [the insured's] household therefore rested upon our evaluation of a conglomeration of factors. See also Rathbun v. Aetna Casualty Surety Co., 144 Conn. 165, 169, 128 A.2d 327 (1956).
. . . .
 [S]tatements expressing the intent of a claimed resident as to where he or she lives are merely one factor among many to be considered in determining household residence.
(Citations omitted.) Middlesex Mutual Assurance Co. v. Walsh,
supra, 218 Conn. 686-87. As noted above, regardless of the plaintiff's statements to his doctor, the other relevant factors support the finding of residency. In addition, the plaintiff offered a plausible excuse for the conflicting statements.
The court also finds that the plaintiff was employed as a machinist for one and one-half years prior to the accident, at which he earned a weekly net amount of $260.00. The court finds that the defendant missed two weeks as a result of the accident, and was forced to work half-days for 11 weeks. Although the plaintiff was eventually fired, the plaintiff does not claim any resulting lost wages as an element of damages. (Plaintiff's Post-trial CT Page 11308 Brief, p. 6.) Accordingly, the court finds that the plaintiff's damages for lost wages as follows:
2 Weeks at $260.00/wk = $520.00
11 half-weeks at $260.00/wk ($130.00) = $1,430.00
TOTAL LOST WAGES = $1,950.00
Based on the testimony of Dr. Peter Lago, the court further finds that as a result of the accident, the plaintiff sustained back injuries and was treated for three months, 3 to 4 times per week. The evidence establishes that the plaintiff incurred $2680.00 in medical bills for said treatment. The court credits the doctor's testimony regarding the plaintiff's impairment, which was rated a 5% for the cervical spine, 5% for the back, and 2.5% for the left shoulder. The court also finds that plaintiff suffered recurring stiffness and pain in the neck and back as a result of the accident. Accordingly, based on all the testimony and evidence, the court finds the plaintiff's noneconomic damages, including pain and suffering, in the amount of $21,000.00. The court also finds that the evidence supports the following special damages:
Dr. Peter Lago $2,680.00
 St. Mary's Hospital 9-28-91 382.24 (emergency room visit)
St. Mary's Hospital 5-29-92 428.83
Naugatuck Valley Radiology Assoc. 173.53
Naugatuck Valley Radiology Assoc. 189.00
Westwood CVS — prescriptions 291.35
Dr. Edward Savarese 1,305.00
 Magnetic Therapy Center 230.04 ----------------------------------------------------------- TOTAL MEDICAL $5,679.99
As noted above, the court finds that the plaintiff was a resident of the insured's household and, therefore, he is a CT Page 11309 "covered person" under the terms of the policy. The court, therefore, awards the plaintiff in accordance with the above-noted findings of damages, as follows:
TOTAL MEDICAL $5,679.99
TOTAL LOST WAGES $1,950.00
 NONECONOMIC $21,000.00 ----------- ---------- TOTAL $28,629.99
Less credit (per stipulation) $16,066.67
TOTAL AWARD $12,563.32
SYLVESTER, J.