[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: APPLICATION TO COMPEL ARBITRATION
John Majernicek, Sr., Georgetta Majernicek and John Majernicek, Jr. (plaintiffs) all resided in the same household and had an automobile liability insurance policy with The Hartford Casualty Insurance Company (defendant). On June 29, 1990, John, Jr. was injured in a motor vehicle accident. The insurance carrier for the operator of the other vehicle paid John, Jr. the policy limit of $100,000. Thereafter, the plaintiffs notified the defendant that they were seeking underinsured motorists benefits pursuant to the policy issued by the defendant.
The defendant initially accepted the claim and, after arbitrators were named, attempted to settle the claim. After the plaintiffs rejected the offer of settlement, the defendant withdrew its selection of an arbitrator and denied coverage. The plaintiffs then filed the subject application for an order to proceed to arbitration pursuant to the arbitration provisions of the policy. The case was tried to the court to resolve the threshold question of whether the policy issued by the defendant was cancelled or otherwise terminated prior to the accident of June 29, 1990.
The plaintiffs claim that the policy was in force on the date of the accident for four reasons. First, the policy provision that provides for automatic termination when the insureds obtain similiar [similar] liability insurance on the vehicles violates CT Page 13940 General Statutes Sections 38a-341, 38a-342 and 38a-343 and is, therefore, unenforceable. Second, any purported cancellation by Georgetta was ineffective because: a) John, Sr. did not sign the cancellation request, b) Georgetta was not acting as John, Sr.'s agent when she signed the cancellation request and c) there were fatal defects and omissions in the document itself. Third, the defendant sent written notice to the plaintiffs that their insurance would be cancelled as of July 5, 1990, leading the plaintiffs to believe that the policy was in force on June 29, 1990. Fourth, the defendant waived any right to disclaim coverage by its actions in sending the notice of a July 5, 1990 cancellation date, initially accepting the claim, appointing an arbitrator and offering to settle the case.
The defendant posits three reasons why the policy was not in force on June 29, 1990. First, the plaintiffs purchased similiar [similar] liability insurance on the same vehicles from Allstate Insurance Company (Allstate) effective as of June 1, 1990, thereby automatically terminating the defendant's policy as of that same date. Second, Georgetta, acting for herself and for John, Sr., executed a cancellation of the defendant's policy effective as of June 1, 1990. Third, the defendant dealt with the claim on the mistaken belief that the policy was in force and conduct that results from such a mistaken belief does not constitute a waiver because there was no voluntary relinquishment of a known right.
The court concludes that the automatic termination provision of the policy was triggered by the plaintiffs' action in obtaining other similiar [similar] insurance on the same vehicles. The Allstate policy was effective as of June 1, 1990, therefore, the defendant's policy terminated as of that same date. The court also concludes that the doctrine of waiver does not apply in the circumstances of this case. These conclusions make discussion of the plaintiffs' cancellation claims unnecessary.[1]
The Hartford insurance policy provides in Part F under Termination: "Automatic Termination. . . . If you obtain other insurance on your covered auto, any similiar [similar] insurance provided by this policy will terminate as to that auto on the effective date of the other insurance." (emphasis in policy). The court finds as a fact that the plaintiffs obtained auto insurance with Allstate for the same vehicles and drivers as were named in the Hartford policy with the Allstate coverage being effective as CT Page 13941 of June 1, 1990.
"The general rules of contract construction . . . apply when construing the terms of an insurance policy. Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (citation omitted; internal quotation marks omitted). Aetna Casualty Surety Co. v. CNA Ins.Co., 221 Conn. 779, 786, 606 A.2d 990 (1992). The language here leaves no room for any meaning other than that the actions of the plaintiffs in obtaining other insurance coverage terminated the policy. The plaintiffs do not challenge the conclusion that the policy language means exactly what it says, rather they assert that enforcement of the clause is prohibited by statute.
The plaintiffs cite three statutes in support of their claim. General Statutes Section 38a-341 defines "policy" as "an automobile liability insurance policy providing among other coverage a body injury liability . . ." That section goes on to define a nonpayment of premium as "failure of the named insured to discharge when due any of his obligations in connection with the payment of premiums on the policy, or any installment of such premium, . . . ." General Statutes Section 38a-342 provides in part:
 ". . . A notice of cancellation of policy shall be effective only if it is based on one or more of the following reasons: (1) non-payment of premiums; . . . ."
General Statutes Section 38a-343 provides in part:
 "No notice of cancellation of policy to which section 38a-342
applies may be effective unless sent . . . by the insurer to the named insured at least forty-five days before the effective date of cancellation, provided that where the cancellation is for non-payment of premium at least ten days notice . . . shall be given. . . ."
The plaintiffs cite several cases for the proposition that the cited cancellation statutes are to be strictly construed against the insurer. Those cases all involve the insurer notifying the insured of a cancellation of the policy. Such cases are inapposite where, as here, the the insureds take action that terminates the policy pursuant to its plain terms. The plaintiffs cite no authority that would invalidate the automatic termination clause. There appears to be no public policy reason why the CT Page 13942 plaintiffs should be able to terminate the defendant's policy by their own action of obtaining a replacement policy, pay the defendant a premium only through the date that the new policy becomes effective, and yet remain covered under the defendant's policy. The plaintiffs' application for the Allstate policy is dated May 14, 1990 and lists the defendant as the plaintiffs' carrier as of that date. The expiration date for the defendant's policy is stated as June 10, 1990. Even though June 1, 1990 is the actual termination date, the plaintiffs' own Allstate application shows that they were aware that coverage under the Hartford policy ended well before June 29, 1990.
The plaintiffs assert that even if the defendant's policy terminated as of June 1, 1990, the conduct of the defendant thereafter constituted a waiver of its right to "disclaim" coverage. The elements of the waiver doctrine are well known. "Waiver is the voluntary relinquishment of a known right."Harlach v. Metropolitan Property Liability Ins., 221 Conn. 185,192, 602 A.2d 1007 (1992). "There cannot be a finding of waiver unless the party has both knowledge of the existence of the right and intention to relinquish it. . . . Inherent in the concept of waiver is the notion of assent, which is an act of understanding that presupposes that the party to be affected has knowledge of its rights but does not want to assert them. . . . Whether conduct constitutes a waiver is a question of fact." (citations omitted; internal quotation marks omitted) Fisette v. DiPietro,28 Conn. App. 379, 385, 611 A.2d 417.
As the plaintiffs claim that there was a waiver, they have the burden of proving it. The court finds that the plaintiffs have failed to do so because they have not shown that the defendant, at the time of the alleged acts of waiver, knew that the plaintiffs had terminated the defendants' policy by purchasing the Allstate policy. "[W]here one lacks knowledge of a right there is no basis upon which a waiver of it can rest." (citations omitted; internal quotation marks omitted), Novella v.Hartford Accident Indemnity Co., 163 Conn. 552, 562,316 A.2d 394. The defendant never waived its right to claim that its policy with the plaintiffs terminated prior to the accident of June 29, 1990.
The cases on which the plaintiffs rely are inapposite. They involve circumstances where the insurer, with full knowledge ofthe facts constituting a right to disclaim, engaged in conduct that was found to be a waiver of such right. The critical CT Page 13943 difference in the instant case is that the defendant did not have knowledge of the plaintiffs' act of termination while it was engaging in the conduct that the plaintiffs now claim amounts to a waiver.
The plaintiffs also assert that the defendant "is estopped from now asserting the policy was cancelled on June 1, 1990." "The essential elements of estoppel are that the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . ." (citations omitted, internal quotation marks omitted), Hanover Ins. Co. v. Fireman's Fund Ins. Co., 217 Conn. 340,351, 586 A.2d 567. The plaintiffs have failed to prove that they either relied on acts of the defendant or changed their position to their injury in reliance on the defendant's conduct. The court finds that the defendant is not estopped from asserting the termination of the policy.
The application for an order to proceed to arbitration is denied.
Spear, J.