[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The instant proceeding is an action for a declaratory judgment instituted by the plaintiff (hereinafter "Landis"), the assignee of a claim rightfully filed by one Gary Rocco under an insurance policy issued to him by State Farm Mutual Automobile Insurance Company (hereinafter "State Farm"). Landis was injured on April 8, 1989 when the car she was operating collided with a Hyundai automobile owned by Rocco and operated by his wife. She claims through Rocco that the Hyundai was insured by State Farm under a liability policy which had been issued to Rocco for that vehicle. State Farm contends that Rocco did not pay the premium on the policy and, therefore, it was not in effect at the time of the accident and, consequently there is no coverage.
The time sequence with which we are concerned, for purposes of this decision, began in August of 1988 when State Farm issued Policy No. 78820-B15 07A which insured the 1988 Hyundai automobile conceded to have struck the Landis vehicle. The effective dates of coverage set forth in that policy were August 17, 1988 through February 15, 1989. Sometime prior to February 15, 1989, State Farm concedes that it sent Rocco a policy declaration page and a Connecticut no-fault identification card for a renewal of the policy for the period February 15, 1989 CT Page 1752 through August 15, 1989, which period includes the date of the accident which generated this litigation.
While Rocco's recollection leaves something to be desired, there is NO EVIDENCE (emphasis supplied) to contradict his testimony that he did not believe he received the renewal documents prior to February 15, 1989. Rocco sent a cheque to State Farm in the amount charged for the policy renewal, which cheque is dated March 15th, 1989, and which cheque was returned to Rocco on April 11, 1989.
It is the plaintiff's position that State Farm has admitted that it did not satisfy the statutory requisites for either renewal or cancellation, of the policy. State Farm contends that any obligations that it may have with respect to renewal or cancellation procedures are irrelevant because it asserts that the policy and its concomitant coverage lapsed for nonpayment of premium and, consequently, Rocco's arguments expressed by Landis are of no significance much less validity.
It is somewhat distressing that State Farm's only witness, its underwriting operations supervisor, during the time at issue, was able to offer so little direct testimony of any value to the court as to the factual predicate of this controversy. While he was most impressive in his appearance and is intelligent and articulate, he testified essentially and exclusively as to State Farm's practice and procedures. That testimony took us through a somewhat lengthy explanation of those practices and procedures which are indeed elaborate but, to reiterate, of virtually no help to this court. What usually happens, what usually is done, what our procedure is, what the staff would ordinarily do, what the various departments who might contribute to the issuance of policies, renewal of policies and/or cancellation of policies in any given case is of no assistance simply because he could not testify as what did in fact happen to the Rocco policy with respect to the time sequences and the company's actions concerning it.
Prior to the commencement of trial, the parties entered into a stipulation. It recited that on or prior to August 17, 1988, State Farm Mutual Automobile Insurance Company issued to Gary Rocco, 18 Merlin Avenue, New Fairfield, Connecticut, an automobile liability insurance policy which covered a 1988 Hyundai automobile. The policy had a policy number of 78820 B15 07a and was effective from August 17, 1988 through February 15, CT Page 1753 1989. A notice provided that the renewal premium could be paid in a lump sum of $298.72 or be paid in two installments of $151.36 each. State Farm also mailed the following to Rocco: the declaration page for the RENEWED (emphasis supplied) policy indicating an effective date of February 15, 1989, an expiration date of August 15, 1989, and two no-fault Connecticut insurance identification cards reflecting the same dates of coverage.
The stipulation resolves the threshold problem for the court. An insurer is bound by its admission (stipulation) that it had issued a renewal. Elstein v. Ins. Co. of North America CarolPorrata a/k/a Carol Porrata Elstein v. Insurance Company of NorthAmerica, Superior Court, Judicial District of Fairfield at Bridgeport, Docket No. 281737 (December 4, 1992). In addition, the credible testimony offered to the court does not permit it to find that State Farm complied with the time constraints mandated by § 38a-323(b)[1] of the General Statutes, counsel's argument for unequivocal support notwithstanding. Accordingly, this court finds that State Farm failed to mail a renewal of the policy to Rocco "not less than thirty [(30)] days in advance of the policy's renewal or anniversary date."[2]
The evidence relating to mailing was conflicting on certain happenings and of questionable credibility at best. See Clary v.Empire Mutual Ins. Co., 30 Conn. Sup. 113, 116. Rocco's testimony established that he drew a cheque on March 15, 1989, payable to the defendant in payment of that premium. State Farm contends that the March 15th cheque was transmitted to it after March 31, 1989, and on April 11, 1989, three days after the accident it was returned. Interestingly enough, State Farm admits that a policy exists within its organization to accept premium payments up to thirty-nine (39) days "late" but never later than that thirty-nine (39) day period. By its calculation, the cheque was received on the fortieth (40) day. This "policy" is not communicated to policy holders and, therefore, is an internal practice, if existent at all, is of questionable duration, validity and is found to be unworthy of belief.
State Farm relies upon nonpayment and asserts that the policy lapsed and was never indeed renewed because of the lack of that payment. This posture is, however, inconsistent with the aforesaid stipulation. To bootstrap its premise, it seizes upon a quote to the effect that "everybody in this room and everybody knows if you don't pay your premium your policy isn't renewed."Librizzi v. State Farm Fire and Cas. Co., 236 Ill. App.3d 582, CT Page 1754603 N.E.2d 821, 826. It would also rely upon the plain language of the policy and assert that the plaintiff has intentionally overlooked and ignored the relevant language because the application of that language, under the circumstances of this case, mandates a finding that the policy of insurance was not in effect on the date of the accident. It cites precedent to bolster its posture on this argument. "The general rules of contract construction . . . apply when construing the terms of an insurance policy." Aetna Casualty Surety Co. v. CNA Ins. Co.,221 Conn. 779, 786. "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." Barnard v. Barnard, 214 Conn. 99, 110. This court has no quarrel with that principle.
However, that black letter precedent is somewhat misplaced in this case. "[I]t is . . . well settled that the state may, in the exercise of its powers, limit the freedom to contract where the health, safety, morals and well-being of those subject to its jurisdiction require and neither the `contract' clause nor the `due process' clause has the effect of overriding the power of state to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort or general welfare of the community . . . All contract and property rights are held subject to [the] . . . fair exercise [of that power].Atlantic Coast Line R. Co. v. Goldsboro, 232 U.S. 548, 558,34 S.Ct. 364, 58 L.Ed. 721 [1914]. . . . Elida Inc. v. Harmor RealtyCorporation, 177 Conn. 218, 223-24. . . . It is settled that [c]ontracts must be understood as made in reference to the possible exercise of the rightful authority of the [state], and no obligation of a contract can extend to the defeat of legitimate [state] authority. Louisville Nashville R. Co. v.Mottley, 219 U.S. 467, 482, 31 S.Ct. 265 55 L.Ed. 297 (1911)." (Internal quotation marks omitted.) All Brand Importers, Inc. v.Department of Liquor Control, 213 Conn. 184, 206. The insurance industry and the documents it issues are subject to those laws.
The court has found that the policy was indeed renewed. Having been renewed, it can only be terminated by the cancellation provisions of the statutes. See § 38a-343 et seq. This admittedly was not done here. All of the policies, all of the usual practices and all of the ordinary occurrences which exist in carriers avail the defendant here nothing. The credible evidence simply does not support its position.
While it may be argued that the results herein are somewhat CT Page 1755 unusual, when one considers the abject failure of the carrier to comply with the statutory requisites, and to provide credible evidence of the carrier's actions, with respect to certain specific policies, clearly leads to this determination. Wherefore, judgment may enter that the subject policy was in full force and effect on the date of the accident, and that the defendant is obligated to defend the plaintiff's claim, negotiate the claim in good faith and/or to pay any judgment that may be rendered against Rocco which does not exceed the policy limits.
Moraghan, J.