[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These are the third party plaintiffs', Brian and Carol Barr, and the third party defendant's, General Accident Ins. Co. (General) motion and cross-motion for summary judgment. The following facts are undisputed. Carol Barr procured automobile insurance for two vehicles from General. Sometime thereafter, Brian Barr, her husband, was added as an insured to this policy. Eventually, Carol and Brian separated. Carol Barr learned that she could obtain cheaper and more convenient insurance from Metropolitan Property and Casualty Ins. Co. (Metropolitan). Unbeknownst to Brian Barr, Carol applied for and secured automobile insurance for the two vehicles from Metropolitan, effective December 17, 1993, naming herself and her estranged husband as insureds. On January 4, 1994, Brian Barr negligently drove one of the insured vehicles and had an accident which caused injury to Linda Hodgson, the original plaintiff in this action. Hodgson's claims have been settled and withdrawn. CT Page 2935-E
An issue remains concerning contribution by General, Metropolitan, and the Barrs. The Barrs contend that both the policy issued by General and the one issued by Metropolitan were in effect on the date of the accident. General contends that the acquisition of new insurance coverage by Metropolitan automatically terminated its coverage on the effective date of Metropolitan's policy, viz. December 17, 1993, eighteen days before the accident. The General policy had a liability limit of $300,000, while the Metropolitan limit was $100,000. The question posed by these motions is whether the unilateral procurement of new automobile insurance by Carol Barr, without Brian Barr's knowledge or consent and with a substantially lower liability limit, automatically terminated the General policy by its terms.
Critical to the court's determination of these motions are the activating conditions of the automatic termination provision under the General policy, which provision contains the following language at p. 10 of the policy. "If you obtain other insurance on `your covered auto' any similar insurance provided by this policy will terminate as to that auto on the effective date of CT Page 2935-F the other insurance."
The Barrs point out that the word "you" is specifically defined on p. 1 of the General policy to mean "[t]he `named insured' shown in the Declarations". Both Carol A. Barr and Brian B. Barr are named in the amended declaration. The Barrs argue that the purchase of other automobile insurance by Carol Barr, acting alone, failed to trigger the termination clause in the General policy because "named insured" must include both Carol and Brian Barr. Under this interpretation, Carol Barr's solitary action cannot satisfy the definition of "named insured" and, consequently, of "you" within the meaning of the General policy. Thus, they argue, the General policy remained effective on the date of the accident.
General counters that, even though Carol Barr acted without Brian's consent, she purchased new insurance for the same vehicles under both their names. This purchase automatically terminated the General policy on December 17, 1993, the day the Metropolitan coverage began.
The court, sua sponte, raised another issue which the parties CT Page 2935-G have addressed in supplemental briefs. This issue is whether the phrase "similar insurance," as employed in the automatic termination provision of the General policy, means insurance similar in type or also similar in amount. In other words, does the reduction in liability limit from $300,000 to $100,000 still come within the meaning of "similar insurance"? Because the court feels that the answer to this question is dispositive, the court addresses that issue directly. The parties' and the court's research discloses no Connecticut cases dealing with this topic making the question one of first impression.
The California Court of Appeals has construed the phrase "similar insurance" and determined that the word "similar" as used in this phrase means "nearly corresponding; resembling in many respects; somewhat like; having a general likeness; . . .; having characteristics in common; very much alike; comparable, alike in substance or structure, identical." Darrah v. CaliforniaState Automobile Association, 259 Cal.App.2d 243, 247 (1968). (Internal quotations omitted.)
Connecticut courts have interpreted the word "similar" in CT Page 2935-H noninsurance contexts to mean "nearly corresponding; resembling in many respects; somewhat like; having a general likeness," and, in ordinary usage, "implies an allowance for some degree of difference," McLaughlin v. Poucher, 127 Conn. 441, 446 (1941); also "having general likeness although allowing for some degree of difference". Gangi v. Sears, Roebuck Co., 33 Conn. Sup. 81,82 (1976).
Despite these precedents, the phrase "similar insurance" as used in the automatic termination clause in question appears ambiguous as to whether the similarity applies only to the type or must exist as to amount also. A longstanding rule of insurance contract construction is that any ambiguity in the language of the policy be interpreted in favor of coverage because the insurance company has drafted the document. Streitweiss v.Middlesex Mutual Assurance Co., 219 Conn. 371, 375 (1991). Using this rule of construction, the court holds that the phrase "similar insurance" contained in the automatic termination provision of the General policy requires comparability both as to type and amount of liability coverage.
This determination is consistent with the purpose behind CT Page 2935-I "other insurance" provisions. The original reason for such clauses was to prevent overinsurance and double recovery. AetnaCasualty and Surety Co. v. CNA Ins. Co., 221 Conn. 779, 783
(1992). These clauses evolved, with respect to automobile liability insurance contracts, to "function solely to reduce or eliminate the insurer's loss in the event of concurrent coverage of the same risk." Id. (Emphasis added.) Such clauses are valid "as long as their enforcement does not compromise coverage for the insured," Id. (Emphasis added.) If an insured "is affordedfull indemnification for a loss," there is no public policy against their use. Id., 785. (Emphasis added.)
The construction proffered by General would afford the insureds in this case less than full indemnification and compromise the $300,000 coverage purchased in contravention of the principles espoused in Aetna Casualty and Surety Co. v. CNAIns. Co., supra. A reduction of liability limit to $100,000 appears significant rather than "nearly corresponding" or being "comparable" to the original figure of $300,000. The court concludes that such a reduction rendered the Metropolitan policy coverage dissimilar. The lack of similarity failed to terminate CT Page 2935-J automatically the General policy and that policy remained in force on the date of the accident.
The motion for summary judgment of the Barrs is granted, and the motion for summary judgment by General is denied.
Sferrazza, J.