In re COLMARK I LIMITED PARTNERSHIP, Debtor.

COLMARK I LIMITED PARTNERSHIP, Hal M. Hirsch, As Trustee Of The Consolidated Estates of Colonial Realty Company, Jonathan Googel and Benjamin Sisti, Plaintiffs,

v.

GRAUBARD, MOLLEN, HOROWITZ, POMERANZ & SHAPIRO, Defendant.

Bankruptcy No. 91–20577.
Adv. No. 93–2058.

United States Bankruptcy Court,
D. Connecticut.

Nov. 13, 1995.

Ronald I. Chorches, Chorches & Novak, P.C., Wethersfield, CT, for Colmark I Limited Partnership, Co–Plaintiff.

Howard P. Magaliff, Gainsburg & Hirsch, Purchase, NY, for Hal M. Hirsch, Trustee, Co–Plaintiff.

David M.S. Shaiken, Shaiken & McDade, P.C., Hartford, CT, for Defendant.

*RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, TO DISMISS AMENDED COMPLAINT AS TO THE CO–PLAINTIFF, COLMARK I LIMITED PARTNERSHIP*

ROBERT L. KRECHEVSKY, Chief Judge.

## I.

In an amended complaint filed on December 8, 1993, the co-plaintiff, Colmark I Limited Partnership ("Colmark"), seeks to recover $250,000.00 from the defendant law firm, Graubard, Mollen, Horowitz, Pomeranz & Shapiro, generally contending in Counts One, Two and Three of the complaint that the defendant's receipt of such sum on September 13, 1990 constituted a fraudulent transfer, in Count Four that the court should impose a constructive trust on such sum, and in Count Five, that the monies are recoverable as property of Colmark's estate. The defendant, on July 5, 1995, filed the above-entitled motion accompanied by affidavits, a statement of material facts not in dispute and a memorandum of law. Colmark, on August 7, 1995, filed a memorandum of law objecting to the defendant's motion together with an affidavit and a statement of material facts as to which it contends there exists a genuine issue to be tried. The defendant, on September 1, 1995, filed a reply memorandum.

## II.

### BACKGROUND

#### A.

The following background is derived from the pleadings, affidavits and other papers filed in the proceeding. The co-plaintiff, Colmark, is a Chapter 11 debtor whose plan of reorganization the court confirmed on May 1, 1992. The co-plaintiff, Hal M. Hirsch, as Trustee of the Consolidated Estates of Colonial Realty Company, Jonathan Googel and Benjamin Sisti ("Hirsch"), is the Chapter 7 trustee of the named estates. Colonial Realty Company ("Colonial Realty"), together with its general partners, Jonathan Googel ("Googel") and Benjamin Sisti ("Sisti"), prior to September 14, 1990, had been the syndicators of numerous limited partnerships which invested mainly in income-producing real estate. Colonial Realty, as the managing general partner in many of these limited partnerships, handled the finances of each limited partnership out of an office located in West Hartford, Connecticut.

Googel and Sisti approached the defendant, a law firm located in New York, New York in early September, 1990, to represent them and Colonial Realty in a possible bankruptcy filing. The defendant accepted the representation upon requesting and receiving a $250,000.00 retainer. The retainer was paid by a check dated September 13, 1990 signed by Sisti, which bore the handwritten notations "Col. Clients Fund" and "# 007" (the "Retainer Check"), and drawn on The Farmington Savings Bank (the "Bank"), located in Farmington, Connecticut, Account No. 01–57–40000136 ("The Account"). The Bank's records described The Account as "Colonial Clients Fund," and the Bank paid the check on September 19, 1990.

On September 14, 1990, an involuntary petition under Chapter 7 was filed against Colonial Realty. Colonial Realty converted its case to one under Chapter 11 on September 27, 1990, and the court authorized the defendant to represent Colonial Realty in the Chapter 11 case. The application for the defendant's employment disclosed the $250,-000.00 retainer, and the court subsequently

approved payment of fees substantially in excess of that amount to the defendant.

Colonial Realty had opened The Account on or about September 1, 1990, and the plaintiffs allege The Account contained funds belonging to various of the limited partnerships syndicated by Colonial Realty. The defendant concedes that between September 1, 1990 and September 12, 1990, $405,584.50 of Colmark's funds (checks payable to Colmark) were deposited into The Account. On September 19, 1990, after the payment of the Retainer Check, the balance in The Account was $1,699,390.60.

The court, at Colmark's request, in July 1992 established a bar date in the Colonial Realty estate for parties to file claims to funds in The Account. On March 25, 1993, the court approved a compromise under which Colmark, Hirsch[1] and First Nationwide Bank, the only three claimants to these funds, each received one-third of $281,521.54, plus accrued interest, the then Account balance. The compromise noted that Colmark had filed a claim of $642,533.93, and that Hirsch had filed one claim of $1,369,889.37 on behalf of limited partnerships in which Colonial Realty was the general partner, a second claim in an undetermined amount representing general partner fees and loan repayments owed by limited partnerships to Colonial Realty and a third claim of $322,390.53 on behalf of limited partners. The compromise further stated that Colmark reserved all rights it may have against parties other than those to the compromise.

The defendant, at the time it received the Retainer Check, sought and received assurances from Googel and/or Sisti that the funds in The Account were lien free and unencumbered by claims of any third parties. Colonial Realty's bankruptcy schedules listed Colmark as owing Colonial Realty $3,685,000 for loans and advances made by Colonial Realty to Colmark.

## B.

All of Colmark's causes of action are based upon its contention that since (a) the defendant accepted the Retainer Check marked as drawn on a clients' funds account, (b) the funds in this account were, in fact, not funds of Colonial Realty, and (c) Colmark received no benefit from the transfer of the $250,-000.00, the transfer constitutes a fraudulent transfer, an unauthorized transfer of estate property, or a transfer to which a constructive trust should be applied. Colmark asserts Hirsch represents all other limited partnerships whose funds had been deposited in The Account.

The defendant asserts it had no actual knowledge that any of the funds in The Account did not belong to Colonial Realty, if that is the case, and that the notation of "Col. Clients Fund" is insufficient to deprive the defendant of its status as a good-faith transferee. The defendant further contends Colmark cannot trace any part of the $405,-584.50, concededly deposited in The Account, as transferred to the defendant, and that Colonial Realty at all relevant times possessed a common-law right of offset for its loans and advances to Colmark against any monies of Colmark that Colonial Realty held.

Colmark contends material issues of fact exist as to whether: (1) the defendant is a good faith transferee; (2) The Account contained any funds of Colonial Realty; (3) Colonial Realty had the right to use The Account to pay a retainer to the defendant; (4) the funds in The Account were held in trust for the benefit of Colmark; (5) Colmark can trace funds out of The Account into the hands of the defendant; and (6) the defendant can assert a right of setoff belonging to Colonial Realty.

Colmark submitted an affidavit of Bruce Linton, its former property manager, averring The Account contained only funds of Colmark and other limited partnerships and no funds of Colonial Realty, that Colmark received no benefit from the $250,000.00 transfer and that Colmark and Hirsch can trace funds out of The Account to the defendant. The defendant submitted affidavits of George Riggs, a certified public accountant,

---

1. The court in the Colonial Realty estate entered an order on March 9, 1992 which, in effect, assigned to Hirsch the rights of certain limited partnerships to actions to avoid transactions due to void or voidable transfers.

and Stoddard D. Platt, a member of the defendant firm. Mr. Riggs opined that (1) The Account balance at all relevant times exceeded the amount of the Retainer Check and also exceeded the amount of funds deposited by Colmark; (2) there is no evidence that the funds in The Account were held in trust for Colmark or any other entity; and (3) Colmark's funds in The Account cannot be traced into the defendant's hands. Attorney Platt represented that at the time the defendant received the Retainer Check, it sought and received assurances that the funds in The Account were lien free and unencumbered by claims of any third party, and opined that Colmark's indebtedness to Colonial was greater than the amount Colmark claimed it had on deposit in The Account.

### III.

### DISCUSSION

#### A.

■ Fed.R.Civ.P. 56(c), made applicable in bankruptcy proceedings by Fed.R.Bankr.P. 7056, provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (*quoting* Fed.R.Civ.P. 56(c)). A dispute concerning a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of proving that no material facts are in dispute, and in considering such a motion, the court "must 'resolve all ambiguities and draw all reasonable inferences in favor' of the non-moving party...." *Mikinberg v. Baltic S.S. Co.*, 988 F.2d 327, 330 (2d Cir.1993) (*quoting Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975)).

#### B.

■ The defendant first contends that Count Four, alleging a constructive trust, should be dismissed because Colmark has alleged no facts which identify a trust res in the defendant's hands. "It is hornbook law that before a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his own property into a product in the hands of the wrongdoer." *United States v. Benitez*, 779 F.2d 135, 140 (2d Cir.1985). The court agrees that Count Four is deficient on its face, as alleged by the defendant, and is dismissed as to Colmark.

#### C.

■ The defendant next alleges Colmark cannot trace and identify the funds transferred to the defendant as Colmark's funds. At all relevant times the defendant contends the balance in The Account, including after payment of the Retainer Check, contained funds sufficient to cover the amount of funds deposited by Colmark ($405,584.50). The defendant relies on the application of the intermediate balance rule which provides that there is a presumption that if funds are withdrawn from an account composed partially of trust funds and partially of other funds, for a nontrust purpose, the nontrust funds are deemed transferred first and the trust funds last. *In re Drexel Burnham Lambert Group, Inc.*, 142 B.R. 633, 637 (S.D.N.Y.1992). Restatement (Second) of Trusts § 202 cmt. j (1959).

Colmark responds that, in the present matter, Googel and Sisti mingled Colmark's money with other limited partnerships' money, and that none of the money in The Account was that of Colonial Realty, Googel or Sisti. The interests of those other limited partnerships in The Account are represented in this proceeding by Hirsch. If, as Colmark contends, all the monies in The Account belonged either to Hirsch or Colmark, the intermediate balance rule may not aid the defendant. A material issue of fact exists as to whose monies were in The Account.

#### D.

The defendant contends that if the court does not accept as dispositive its argument

on the tracing issue, summary judgment is still appropriate because Colmark's interest in The Account was offset by over $3.6 million in debt that Colmark owed Colonial Realty. Colmark answers that Colonial Realty has no right of setoff because: (1) Googel and Sisti (general partners of Colmark) breached their duty to segregate Colmark funds and that any claim for money owed Colonial Realty by Colmark is subordinated to the claims of all unsecured creditors of Colmark, totalling over $6 million; and (2) any right to setoff belongs to Colonial Realty alone and not to the defendant.

"The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'". *Citizens Bank of Maryland v. Strumpf*, —— U.S. ——, ——, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995). The burden of proving an enforceable right of setoff rests with the party asserting the right. *See In re Pester Refining Co.*, 845 F.2d 1476, 1486 (8th Cir.1988).

The court has located no authority, nor is any cited by the defendant, that allows the defendant to assert a right of setoff belonging to Colonial Realty. To the contrary, "the right to set-off exists only if each party owns his own claim in his own right severally with the right to collect it in his own name against the debtor in his own right and severally." *In re Britton*, 83 B.R. 914, 918 (Bankr.E.D.N.C.1988). The defendant is not entitled to summary judgment on this argument.

### E.

The defendant argues that even if it were a transferee of Colmark's property,

Bankruptcy Code § 550(b)(1) provides it with a complete defense to Colmark's claim. Section 550(a) [2] allows a trustee to recover property from an initial transferee, or any immediate or mediate transferee of the initial transferee. Section 550(b) [3], however, prevents the trustee from recovering from any immediate or mediate transferee who takes for value, in good faith and without knowledge of the voidability of the transfer avoided. The defendant asserts that when Colonial Realty transferred funds to the defendant, the defendant became a transferee of the initial transferee (Colonial Realty) and took in good faith because it was informed that the funds were Colonial Realty funds and that no other party had an interest in them. Colmark argues that the defendant did not take the funds in good faith and without knowledge that the money was not that of Colonial Realty by fact of the notation "Col. Clients Fund" on the face of the check. Colmark also argues the defendant did not take for value because the defendant (the subsequent transferee) did not provide services or give value to Colmark.

This later argument is unavailing. Section 550(b) does not say value to the debtor, it says value. "A natural reading looks to what the transferee gave up rather than what the debtor received." *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 897 (7th Cir.1988). The defendant, accordingly, took for value because it provided services to Colonial Realty and value to the transferor is sufficient. *Id.*

As to the Defendant taking the funds in good faith, the Second Circuit "has consistently held where subjective issues regarding a litigant's state of mind, motive, sincerity or

---

**2.** Section 550(a) provides:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

**3.** Section 550(b) provides in pertinent part:

> The Trustee may not recover under section (a)(2) of this section from—
> (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
> (2) any immediate or mediate good faith transferee of such transferee....

11 U.S.C. § 550(b).

258

conscience are squarely implicated, summary judgment would appear to be inappropriate and a trial indispensable." *Patrick v. Le-Fevre,* 745 F.2d 153, 159 (2d Cir.1984). *See Leberman v. John Blair & Co.,* 880 F.2d 1555, 1560 (2d Cir.1989) ("Summary judgment is notoriously inappropriate for determination of claims in which issues of intent [and] *good faith ... play dominant roles.").*

As to the defendant taking the funds without knowledge of the voidability of the transfer, neither the Bankruptcy Code, nor its legislative history, define knowledge as used in § 550(b)(1). *Smith v. Mixon,* 788 F.2d 229, 232 (4th Cir.1986). "[K]nowledge is a stronger term than notice, and we do not require a transferee to be a vigilant monitor for the creditors' benefit when he possesses no information suggesting that there is a fraudulent conveyance in the chain ... we believe that a transferee has knowledge if he 'knew facts that would lead a reasonable person to believe that the property transferred was recoverable.'" *Brown v. Third Nat'l Bank (In re Sherman),* 67 F.3d 1348, 1357 (8th Cir.1995) *(quoting Smith v. Mixon,* 788 F.2d 229, 232 n. 2 (4th Cir.1986)). "If a transferee possesses knowledge of facts that suggest a transfer may be fraudulent, and further inquiry by the transferee would reveal facts sufficient to alert him that the property is recoverable, he cannot sit on his heels, thereby preventing a finding that he has knowledge." *Id.* at 1357. The court concludes, with the above principles in mind, that material issues of fact exist as to whether the defendant was a good faith transferee and as to what the defendant knew or should have known regarding the transfer.

## IV.

### CONCLUSION

The motion for summary judgment filed by the defendant is granted as to Count Four and denied on all other counts. It is

SO ORDERED.