**In re WILD BILLS, INC., Debtor.**

**Richard BELFORD, Trustee, Plaintiff,**

v.

**UNION TRUST COMPANY, Brian Goldwitz and David Goldwitz, Defendants.**

Bankruptcy No. 90–50725.
Adv. Pro. No. 94–5099.

United States Bankruptcy Court, D. Connecticut.

March 4, 1997.

John R. Scanlon, Virshup, Caplan & Hecht, New Haven, CT, for Plaintiff.

Edwin L. Doernberger, Sklarz, Gallant & Temkin, P.C., New Haven, CT, for Defendants.

## MEMORANDUM AND ORDER ON COMPLAINT TO AVOID TRANSFERS

ALAN H.W. SHIFF, Chief Judge.

The Trustee seeks to recover $101,020.84 from Union Trust Bank n/k/a First Union Bank of Connecticut ("Union Trust"), representing the amount by which Union Trust allegedly improved its position in contravention of § 553(b).

## BACKGROUND

The relevant facts of this adversary proceeding are substantially undisputed and are set out in the Stipulation of Facts ("Stipulation"), *Pl.Exh. A,* filed with this court on February 28, 1996, which provides in relevant part:

1. This case was commenced by the filing of a Petition by Debtor, Wild Bills, Inc. ("Wild Bills"), on April 23, 1990 under Chapter 11 of [the] Bankruptcy Code, and was converted to Chapter 7 of [the] Bankruptcy Code on May 12, 1992.

2. Prior to filing such Petition, Union Trust made the following loans to Wild Bills, which loans were outstanding in 1990 (Collectively referred to herein as the "Loans").

 a. A Term Loan Promissory Note in the original principal amount of $510,000 dated November 17, 1985 [*Pl.Exh. B; Def.Exh. 2*]. This loan was carried on the books of Union Trust as Loan No. 83.

 b. A Term Loan Promissory Note in the original principal amount of $260,-000.00 dated May 13, 1987 [*Pl.Exh. C;*

*Def.Exh. 3* ]. This loan was advanced in two parts:

(1). An advance of $150,000.00 on May 13, 1987. This advance was carried on the books of Union Trust as Loan No. 75.

(2). An advance of $110,000.00 on June 22, 1988. This advance was carried on the books of Union Trust as Loan No. 42.

c. A Revolving Note in the amount of $1,200,000.00 dated May 13, 1987 [*Pl.Exh. D; Def.Exh. 4* ]. This loan was carried on the books of Union Trust as Loan No. 59.

[d. On May 13, 1987, Wild Bills and Union Trust entered into a Commercial Revolving Loan and Security Agreement, which was guaranteed by both individual and corporate guarantors ("Security Agreement"), *Def.Exh. 5.* The Security Agreement made reference to the previous loan of $510,000.00 as well as the Notes that advanced the sums of $260,000 and $1,200,000.00. *See Security Agreement* at §§ 1.1, 1.2. The Security Agreement also contemplated making "financial accommodations" to Wild Bills including but not limited to "letters of credit," *Security Agreement* § 1.3, and granted a right of setoff to Union Trust against, *inter alia,* all deposits to be exercised "at any time" against any of the Loans, "even though unmatured." *Security Agreement* at § 3.5. By the Security Agreement, Wild Bills granted Union Trust a security interest in all of its personal property and fixtures, including documents, instruments, chattel paper, deposit accounts and certificates of deposits, *Security Agreement* at § 1.6. Financing statements were filed on May 16, 1987. *Def. Exh. 6.* ] [1]

3. In January of 1990, Wild Bills had funds on deposit with Union Trust in bank account numbers 31–588–699–6, 31–088–997–0, 33–339–844–7, 31–668–947–6 and 31–139–045–7.

4. In the course of the banking relationship, Union Trust and Wild Bills entered into a Master Repurchase Agreement [*Pl.Exh. M; Def.Exh. 15* ] ["Repurchase Agreement"]. Each day under the terms of the [Repurchase] Agreement, Union Trust would sell to Wild Bills a portion of its securities in the form of United States Treasury Notes. In exchange for the 'Treasury Notes', a debit of equal value was made from Wild Bills account number 31–588–699–6. The day after the sale, the 'Treasury Notes' were resold to Union Trust and an amount of equal value to the 'Treasury Note[s]' was deposited into Wild Bills account number 31–588–699–6, together with interest earned overnight. Confirmation Statements were issued for each purchase and sale.

5. On January 22, 1990 (91 days prior to the filing of the Petition), pursuant to the terms of the ... Repurchase Agreement, Wild Bills purchased $130,000.00 in 'Treasury Notes' from Union Trust. In consideration of the sale, a debit of $130,000.00 was made from Wild Bills account number 31–588–699–6.

6. On January 23, 1990 (90 days prior to the filing of the Petition), the account statements indicated an opening balance for all Wild Bills bank accounts in the amount of $211,094.01, as follows:

| ACCOUNT NO. | OPENING BALANCE |
|---|---|
| 31–139–045–7 | 394.93 |
| 31–688–947–6 | 126.96 |
| 33–339–844–7 | 26,268.29 |
| 31–088–997–0 | 21,816.09 |
| 31–588–699–6 | 162,487.74 |
| TOTAL | $211,094.01 |

7. At some time later in the day of January 23, 1990, pursuant to the terms of the ... Repurchase Agreement, Union Trust repurchased the $130,000.00 'Treasury Note' from Wild Bills, and in consideration of which $130,025.82 was deposited into Wild Bills bank account number 31–588–699–6 (which amount includes the interest earned overnight).

---

1. Subparagraph d was not included in the Stipulation. These findings are made from the evidence admitted during the trial.

8. The amount owed for the Loans on January 23, 1990 was $1,433,057.40, stated as follows:

| LOAN NO. | PRINCIPAL | INTEREST | TOTAL |
|---|---|---|---|
| 83 | 93,500.00 | 638.52 | 94,138.52 |
| 75 | 20,000.10 | 367.38 | 20,367.48 |
| 42 | 110,000.00 | 718.07 | 110,718.07 |
| 59 | 1,200,000.00 | 7,833.33 | 1,207,833.33 |
| TOTAL | $1,423,500.10 | $9,557.30 | $1,433,057.40 |

9. On January 25, 1990 (88 days prior to the filing of the Petition), Union Trust declared the Loans in default. [By letter dated January 26, 1990, Union Trust informed Wild Bills that it had exercised its right of setoff as a result of several problems that had become apparent from a meeting on January 24, 1990 with representatives of Wild Bills, including that "Wild Bills, Inc. would be unable to pay its indebtedness to [Union Trust]," that the value of the indebtedness to Union Trust was "substantially" more than the collateral, that Wild Bills was unable to service its trade debts, and that Wild Bills "saw no realistic alternative" but to seek bankruptcy protection. *Pl.Exh. P; Def.Exh. 19* ].[2]

10. On January 25, 1990, and in the days following, Three Hundred Thirty Nine Thousand Two Hundred Thirteen Dollars and [Fifty One] Cents ($339,213.51) was transferred from said bank accounts to Union Trust, and was used by Union Trust to partially repay the Loans. Said transfers are detailed as follows:

| ACCOUNT NO. | DATE | AMOUNT |
|---|---|---|
| 31–139–045–7 | 01/25/90 | 394.93 |
| 31–688–947–6 | 01/25/90 | 126.96 |
| 33–339–844–7 | 01/25/90 | 26,268.29 |
| 31–088–997–0 | 01/25/90 | 12,393.18 |
| 31–588–699–6 | 01/25/90 | 140,000.00 |
| 31–588–699–6 | 01/25/90 | 156,330.31 |
| 31–588–699–6 | 01/26/90 | 1,432.18 |
| 31–588–699–6 | 01/31/90 | 140.00 |
| 31–588–699–6 | 02/05/90 | 2,127.66 |
| TOTAL | | $339,213.51 |

11. Prior to such transfers, the amount owed for the Loans on January 25, 1990 was $1,433,887.77, stated as follows:

| LOAN NO. | PRINCIPAL | INTEREST | TOTAL |
|---|---|---|---|
| 83 | 93,500.00 | 693.06 | 94,193.06 |
| 75 | 20,000.10 | 379.04 | 20,379.14 |
| 42 | 110,000.00 | 782.24 | 110,782.24 |
| 59 | 1,200,000.00 | 8,533.33 | 1,208,533.33 |
| TOTAL | $1,423,500.10 | $10,387.67 | $1,433,887.77 |

12. At all times between January 23, 1990 and April 23, 1990, the claim of Union Trust for repayment of the Loans was undersecured.

*Stipulation,* ¶¶ 1–12. On May 9, 1994, the Trustee commenced this adversary proceeding. Count One sought to recover alleged preferential transfers made to the defendants pursuant to § 547. Count Two, which was directed at defendants Goldwitz, individual guarantors on the Loans, was withdrawn on February 28, 1996. By its answer, Union Trust asserted the affirmative defense of set-off under § 553. *Amended Answer* at 2.

## DISCUSSION

■ The Trustee commenced this action, asserting that Wild Bills made preferential transfers to Union Trust in violation of § 547(b). Union Trust raised the affirmative defense that it held a valid right of setoff under § 553 which it properly exercised. *Amended Answer* at 2. The Trustee now contends that the proceeding should be analyzed under § 553 because Union Trust raised that section as an affirmative defense and courts under that scenario have resolved the issues under § 553. *Trustee's Reply Trial Brief* at 1–3; *Tr.* at 4–7. Union Trust counters that the adversary was commenced under § 547, so if it is determined that it had a valid setoff right, the Trustee's action should fail without reaching the improvement in position test provided in § 553(b) because a setoff is not a transfer within the meaning of § 547. *Union Trust's Amended Trial Brief* at 1–3; *Tr.* at 46–48.

The Trustee's right to avoid a transfer must be tested against any right of Union Trust to a pre-petition setoff. *See Durham v. SMI Industries Corporation,* 882 F.2d 881, 882 (4th Cir.1989) (citation omitted). If that right is established, the court does not reach § 547 but makes its decision solely under § 553. *Id.* Other courts have relied upon legislative history to conclude that a setoff is not a "transfer" within the meaning of § 101(54), thus transfer avoidance issues involving setoffs should be properly addressed under § 553. *See, e.g., Braunstein v. Branch Group, Inc. (In re Massachusetts Gas & Electric Light Supply Co., Inc.),* 200

---

**2.** *See* n. 1 *supra.*

B.R. 471, 473 (Bankr.D.Mass.1996); *Jarboe v. U.S. Small Business Administration (In re Hancock)*, 137 B.R. 835, 845 (Bankr. N.D.Okla.1992). Still other courts have reasoned that since § 553(a) does not specifically list § 547 as one of the provisions of the code that would affect a creditor's right of setoff, § 553 is the appropriate section for analysis. *See, e.g., Lee v. Schweiker*, 739 F.2d 870, 873 n. 4 (3d Cir.1984) (citation omitted) ("Our reading of [§ 553(a) ] is that, where a setoff right is being asserted, section 553, rather than section 547, governs the creditor's rights"); *Cain v. Mappa (In re Pineview Care Center, Inc.)*, 152 B.R. 703, 708 (D.N.J.1993). For the reasons that follow, it is concluded that Union Trust held a valid right of setoff and therefore the analysis of the Trustee's right to recover funds setoff by Union Trust is examined under § 553(b).

### *Right of Setoff*

Section 553(b) provides:

(1) ... if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—

(A) 90 days before the date of the filing of the petition; and

(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

(2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

(c) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

11 U.S.C. § 553(b) (West 1995).

The issue presented is whether the Trustee may recover funds from two accounts, to wit: 31–588–699–6 ("Account 6") and 33–339–844–7 ("Account 7"), that were the subject of setoff by Union Trust.[3] As to Account 6, the Trustee contends that $130,025.82, which represented the amount deposited into that account upon the repurchase of the Treasury Notes by Union Trust on January 23, 1990, should not be included in the amount available for setoff on that date. As to Account 7, the Trustee argues that that account was a special purpose account and was therefore not subject to setoff on either January 23, 1990 or January 25, 1990. For the reasons that follow, it is determined that $130,025.82 was properly included in the balance available for setoff in Account 6, the balance of Account 7 was subject to setoff, and accordingly judgment will enter in favor of Union Trust.

Setoff occurs when parties that owe mutual debts subtract one from the other and pay the balance with the intent of avoiding the "absurdity of making A pay B when B owes A." *Citizens Bank of Maryland v. Strumpf*, —— U.S. ——, ——, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995) (citation and internal quotation marks omitted). The right of setoff "belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him." *Aetna Casualty & Surety Company v. LTV Steel Company, Inc. (In re Chateaugay Corporation)*, 94 F.3d 772, 780 (2d Cir.1996) *quoting Gratiot v. United States*, 40 U.S. (15 Pet.) 336, 370, 10 L.Ed. 759 (1841) (internal quotation marks omitted). The party asserting the right bears the burden of establishing that right. *See Newbery Corporation v. Fireman's Fund Insurance Company*, 95 F.3d 1392, 1399 (9th Cir. 1996); *Colmark I Limited Partnership v. Graubard, Mollen, Horowitz, Pomeranz & Shapiro (In re Colmark I Limited Partner-*

---

**3.** The Trustee does not dispute the amounts setoff from accounts 31–139–045–7, 31–688–947–6 and 31–088–997–0.

**14**

*ship),* 189 B.R. 253, 257 (Bankr.D.Conn. 1995).

 The right of a creditor to a setoff is not absolute under bankruptcy law where a Trustee's duty to maximize the assets of a bankruptcy estate must be balanced against the equitable treatment of creditors. *See United States v. Maxwell (In re Pyramid Industries, Inc.),* 170 B.R. 974, 982 (Bankr. N.D.Ill.1994) (citations omitted). The "improvement in position" test of § 553(b)(1) is intended to strike that balance by "prevent[ing] the creditor from using a setoff to put itself in a better position than it was in prior to the ninety-day prepetition period." *Turner v. Small Business Administration (In re Turner),* 96 F.3d 465, 468 (10th Cir. 1996) (citation omitted). The improvement in position test in this case requires a calculation of the insufficiency that existed (1) 90 days before the date of the filing of the petition[4] and (2) on the date of the setoff. To the extent that the amount of the insufficiency on the date of setoff is less than that on the 90th day, the creditor has improved its position in an amount that is recoverable by the trustee. Section 553(b)(2) defines "insufficiency" as the amount by which a creditor's claim exceeds a debtor's claim. Here, the parties agree that January 23, 1990[5] is the 90th day prior to filing, *Stipulation,* ¶ 6, and January 25, 1990 is the date of setoff, *Tr.* at 55.

### Account 7

 The Trustee contends that Account 7, in the amount of $26,268.29, was a money market account against which letters of cred-

---

4. Section 553(b)(1) provides for the calculation of the insufficiency that existed on the later of two dates: the 90th day prior to the filing of the petition or the first date during the 90 days immediately preceding the filing where an insufficiency existed. The Trustee concedes that an insufficiency existed at all times within the 90 day period preceding the bankruptcy filing, *see Tr.* at 14–15. The relevant date is therefore January 23, 1990, the 90th day, *see* Stipulation, ¶ 6. *See also infra* at 16.

5. It is noted that the Trustee takes issue with Union Trust's ability to setoff on this date when the Loans were not declared in default until January 25, 1990. *Tr.* at 16. That argument is

it to Heller Financial and Levi Jeans were held. He argues that that account was a special purpose account as to which there was no mutual debt and no debtor/creditor relationship. *Trustee's Reply Trial Brief* at 8; *Tr.* at 8–13. In effect, the Trustee argues that Account 7 raised a bailor/bailee relationship between the parties, as to which there was no right of setoff. *Tr.* at 12–13. The Trustee has not asserted that any of the other accounts are special purpose accounts. Moreover, the Trustee does not dispute the validity of the loan documents nor does he challenge the specific setoff provisions in any of those documents.

 Initially, it is observed that the bankruptcy code does not create a federal right of setoff, but " . . . § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy." *Citizens Bank of Maryland v. Strumpf, supra,* —— U.S. at ——, 116 S.Ct. at 289. In general, Connecticut law grants "a creditor-bank . . . a right of set-off against funds in its possession belonging to a debtor-depositor." *Vic Gerard Golf Cars, Inc. v. Citizen's National Bank of Fairfield,* 528 F.Supp. 237, 241 (D.Conn.1981).

> It is a general rule that when a depositor is indebted to a bank, the existing indebtedness is due and owing by the depositor to the bank and the debts are mutual, the bank may apply the deposit, or such portion as necessary, to the payment of the debt due it by the depositor, provided there is no express agreement to the contrary and the deposit is not specifically applicable to some other particular purpose.

---

unavailing because the issue of default does not arise in the context of an improvement in position calculation under § 553(b). Union Trust did not setoff against the funds available in Wild Bills' accounts on January 23, 1990 but rather on January 25, 1990. However, in order to determine if Union Trust improved its position, this court must hypothetically setoff the amounts available in Wild Bills' account on January 23, 1990 in order to analyze the insufficiency on that date pursuant to § 553(b)(1)(A). Further, the expansive definition of claim under § 101(5) includes the right to payment of a "liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured" debt.

*Southington Savings Bank v. Rodgers*, 40 Conn.App. 23, 29–30 n. 8, 668 A.2d 733 (1995) (citation omitted), *cert. denied*, 236 Conn. 908, 670 A.2d 1307 (1996).

Here, Wild Bills executed several loan documents which granted Union Trust a right of setoff. Plaintiff's Exhibit B (Def.Exh. 2) granted Union Trust a right of setoff against *"all moneys held by [Union Trust] on deposit* or otherwise to the credit of or belonging to [Wild Bills]." *Pl.Exh. B.* at 2–3 (emphasis added). Plaintiff's Exhibit C (Def.Exh. 3) provided that "[Union Trust] shall have and may exercise a right of set-off for the payment of this Note ... against ... *all deposits, moneys,* securities and property left with [Union Trust] by [Wild Bills] ... or otherwise to the credit of or belonging to [Wild Bills]...." *Pl.Exh. C.* at 2–3 (emphasis added). Plaintiff's Exhibit D (Def.Exh. 4) contained the same setoff language as Exhibit C. *Pl.Exh. D.* at 2. Defendant's Exhibit 5 similarly granted a right of setoff to Union Trust:

> [Wild Bills and its individual and corporate guarantors] hereby gives [Union Trust] a ... right of set-off for Loans upon or against, *all the deposits,* credits, Collateral, and property of [Wild Bills] and/or any Guarantor now or hereafter in the possession or control of [Union Trust] or in transit to it. [Union Trust] may at any time apply or set-off the same, or any part thereof, to any Loan even though unmatured.

*Def.Exh. 5.* at § 3.5 (emphasis added). Plaintiff's Exhibits B, C, and D and Defendant's Exhibit 5 are collectively referred to as "Loan Documents."

 Absent countervailing policy reasons, and none are presented here, parties are bound by their contracts. The controversy of whether Account 7 is a special or general purpose account is resolved by reference to principles of contract law. Under that analysis, courts determine, as a matter of law, whether contract language is clear or ambiguous. *Schiavone v. Pearce*, 79 F.3d 248, 252 (2d Cir.1996). If it is clear, the words of the contract will be given effect, *RLI Insurance Company v. Hartford Accident and Indemnity Co.*, 980 F.2d 120, 122 (2d Cir.1992) (citation omitted), precluding the court from indulging in a "forced construction [that would ignore] provisions or so [distort] them as to accord a meaning other than that evidently intended by the parties." *O'Brien v. United States Fidelity and Guaranty Co.*, 235 Conn. 837, 842, 669 A.2d 1221 (1996). Parties do not generally "insert meaningless provisions in their agreements and therefore every provision must be given effect if reasonably possible." *Hatcho Corporation v. Della Pietra*, 195 Conn. 18, 23, 485 A.2d 1285 (1985) (citation omitted).

The Loan Documents expressly granted a right of setoff to Union Trust against *all* deposits of Wild Bills' held by Union Trust for whatever purpose. The Trustee's argument that the purpose of the deposits of Account 7 was to service a letter of credit in favor of Heller Financial and Levi Jeans is unpersuasive because letters of credit were contemplated by the parties:

> It is specifically contemplated by [Wild Bills, Union Trust] and the Guarantors that the banking relationship evidenced hereby may in [Union Trust's] discretion involve financial accommodations of various types to [Wild Bills] including but not limited to letters of credit.... Consequently, the parties intend that this [Security Agreement] shall govern any and all financial accommodations now or hereafter extended by [Union Trust] to [Wild Bills].

*Def.Exh. 5* at § 1.3. No limitation was made in the Security Agreement, *Def.Exh. 5,* on the exercise of Union Trust's right of setoff against any account attached to a letter of credit, and no subsequent agreement was offered in evidence to suggest any such limitation. The parties were knowledgeable and commercially sophisticated and could have but did not exempt the applicability of Union Trust's setoff rights against Account 7 or any account created for the benefit of a letter of credit. Accordingly, it is concluded that the right to setoff Account 7 was bargained for, expressly provided, and agreed upon between Union Trust and Wild Bills.

### Account 6

 The Trustee does not dispute the amount available for setoff in Account 6 on January 25. He does dispute the amount

that was available on January 23, alleging that only the opening balance of that account was eligible for setoff on the 23rd and not amounts that were deposited or credited to the account during the balance of that day.

### Relevant Time Period of the 90th Day

The Trustee argues that the court must determine "when the '90th day' begins." *Trustee's Trial Brief* at 6. He claims that for purposes of § 553(b), the court must ascertain what debtor/creditor relationship existed at 12:00 a.m. on the 90th day. *Trustee's Reply Trial Brief* at 5–6; *Tr.* at 17–31. Based on that inquiry, Treasury Notes in the aggregate amount of $130,025.82 and an additional amount of $8,506.10, which were credited to Wild Bills' account at some point after 12:00 a.m., *see Stipulation,* ¶¶ 4 and 7, would be excluded from setoff. Union Trust counters that the court must assess the account for the entire 90th day to arrive at the correct setoff amount.

Union Trust is correct. As noted, the parties have agreed that January 23rd was the 90th day prior to the filing of the petition. *See* Rule 9006(a) Fed.R.Bankr.P. The only method to establish that date would be to count *back* from the filing of the petition on April 23rd. It follows then that the debtor/creditor relationship at the end of January 23rd, the 90th day, must include the amounts deposited and credited to the account throughout the day, including the amounts related to the Treasury Notes. The Trustee's argument would only account for 89 days and the first measurable moment of the 90th day. Further, the requirement that the insufficiency that existed "90 days before the date of the filing of the petition," 11 U.S.C. § 553(b)(1), be calculated, indicates that the code is not concerned with a particular time of day, but rather the entire day. *See Paragon Development Enterprises, Inc. v. Redding Bank of Commerce (In re Paragon Development Enterprises, Inc.),* 201 B.R. 254, 260–61 (Bankr.E.D.Cal.1996) (emphasis in original) ("... it is worth noting that § 553(b) only mentions **days** and not **hours.** Limitations periods generally do not expire at a particular hour but rather at the close of business"). *See also Graham Oil Co. v. Gor-*

*don C. York, Inc. (In re Kramer),* 64 B.R. 531, 533 (9th Cir. BAP 1986) ("Only the dates, and not the precise times the transfer and bankruptcy occurred, are relevant").

### Improvement in Position Calculation

*January 25, 1990—Date of Setoff*

█ The debt owed to Union Trust on January 25, 1990 was $1,433,887.77. *Stipulation,* ¶ 11. Union Trust setoff $339,213.51 from all of Wild Bills' accounts. *Stipulation,* ¶ 10. The insufficiency on January 25, 1990 ($1,433,887.77—$339,213.51) was therefore $1,094,674.26.

*January 23, 1990—90th Day*

The parties agree that the sum owed by Wild Bills on January 23, 1990 was $1,433,057.40. *Stipulation,* ¶ 8. On January 23, 1990, the total amount of all of the Wild Bills' accounts with Union Trust was $349,625.93, *see Pl.Exh. F, Def.Exh. 9, Stipulation,* ¶ 6. The resulting insufficiency on January 23, 1990 ($1,433,057.40.–$349,625.93) was $1,083,431.47. Since the insufficiency of $1,094,674.26 on January 25, 1990, the date of setoff, was more than the insufficiency of $1,083,431.47 on January 23, 1990, the 90th day prior to the bankruptcy filing, Union Trust did not improve its position.

### ORDER

The Trustee may not recover the amounts setoff by Union Trust from Accounts 6 and 7, judgment shall enter accordingly, and

IT IS SO ORDERED.