### In re HOLYOKE NURSING HOME, INC., Debtor.

**Holyoke Nursing Home, Inc., Plaintiff,**

v.

**Health Care Financing Administration, Defendant.**

**Bankruptcy No. 00–45238.**
**Adversary No. 00–4448.**

United States Bankruptcy Court,
D. Massachusetts.

Jan. 11, 2002.

---

Paul R. Salvage, Esq., Bacon & Wilson, P.C., Springfield, MA, for Debtor.

Karen L. Goodwin, Assistant U.S. Attorney, Springfield, MA, for HCFU.

Eugene B. Berman, Esq., Kamberg & Berman, P.C., Springfield, MA, for Creditor's Committee.

Richard King, Esq., Worcester, MA, U.S. Trustee.

## MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court are cross motions for summary judgment filed by the Plaintiff Holyoke Nursing Home, Inc. (the "Debtor" or "Holyoke") and Defendant United States Health Care Financing Administration ("HCFA"). Proper disposition of the motions turns on this Court's characterization of HCFA's pre and postpetition recovery of certain prepetition overpayments made to Holyoke on account of Medicare services provided by Holyoke as a skilled nursing care facility, specifically, whether the recoveries constitute offsets or recoupment. While many courts have faced the same question in different districts, this characterization appears to be a matter of first impression in this Circuit.

## I. SUMMARY JUDGMENT STANDARD

The standard for allowance of a motion for summary judgment is well settled. In order for the moving party to prevail, it must demonstrate to the Court that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c) as made applicable by Fed. R. Bankr.P. 7056. The court must view the movant's arguments "scrutinizing the record in the light most flattering to the nonmovant and indulging all reasonable inferences in that party's favor." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994)(citing *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.

1989)). The movant has the preliminary burden to demonstrate that no triable issue of fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Each of the movants has met that preliminary burden. No material fact presented here is disputed.

## II. FACTS

The Debtor is a Massachusetts corporation which, during all relevant periods, operated a 100 bed nursing home in Holyoke, Massachusetts. On April 19, 1990 [1], the Debtor and HCFA entered into a one page Medicare Provider Agreement (the "Provider Agreement"), pursuant to Part A of the Medicare Act, which authorizes payments on behalf of eligible Medicare beneficiaries. 42 U.S.C. § 1395g.

Pursuant to the terms of the Provider Agreement, Holyoke performed necessary services for its Medicare recipient residents from 1990 through February of 2001, and was reimbursed by HCFA for the estimated cost of those services on a monthly basis through HCFA's fiscal intermediary, Associated Hospital Service of Maine ("Associated Hospital"). Payment for services rendered under the Provider Agreement was initially based upon the Debtor's monthly invoices. However, under the applicable regulatory scheme, HCFA does not rely solely on the representations in a provider's invoice. Pursuant to 42 U.S.C. § 1395g, HCFA conducts regular audits in order to verify that the services rendered corresponds to the payments made in specified "cost years." [2]

In 1999, the HCFA conducted such an audit of Holyoke for the 1997 and 1998 cost years. Those audits revealed that

---

1. The effective date of the Agreement was July 1, 1990, as noted on the face of the document.

2. Cost year pertains to a "defined fiscal period." *See* Defendants Motion for Summary Judgment p. 3.

Associated Hospital had overpaid Holyoke in the amounts of $132,073.00 for the 1997 cost year and $241,566.00 for the 1998 cost year (the "Overpayments"). In accordance with the statutes and regulations covering the Medicare program, current payments due Holyoke on account of invoices submitted thereafter were then withheld in order to recover the Overpayments. 42 U.S.C. § 1395g; 42 C.F.R. § 405.371.

On September 29, 2000, Holyoke filed a petition in this Court under Chapter 11 of the Bankruptcy Code. With the consent of the HCFA, Holyoke continued to provide postpetition services under the Provider Agreement and submitted invoices for payment. With exceptions not relevant here, Medicare applied payments due on those postpetition invoices to the Overpayments.

In December, 2000, Holyoke filed the instant "Complaint to Recover Preference and Setoff". Holyoke contends that the amounts due but withheld by HCFA within 90 days of the filing of the Chapter 11 petition, were offsets constituting preferential transfers, avoidable under 11 U.S.C. § 547. Holyoke also maintains that the withholdings made *after* the date of the filing of the petition were unauthorized offsets constituting violations of the automatic stay under 11 U.S.C. § 362(a). HCFA denies that the foregoing withholdings were offsets in either instance. Rather, HCFA contends that the withholdings

were in the nature of recoupment to which neither § 547 nor § 362(a) applied. The parties agree that $99,965.97 was withheld by the HCFA on or within 90 days of the Debtor's Chapter 11 filing, and $77,690.28 was withheld after the petition date.[3]

## III. DISCUSSION

### A. The Medicare Program

The Medicare program was developed in order to provide health care to the elderly and disabled. The structure and provisions of the program are set forth in Title 42 Subchapter XVIII of the Social Security Act. 42 U.S.C. §§ 1395 *et seq.* Pursuant to the applicable provisions of the program, hospital and other institutional providers, such as Holyoke, enter into agreements entitling them to be reimbursed for their reasonable costs in rendering covered services to qualified Medicare patients. 42 U.S.C. § 1395x(v)(1)(A) & 1395f(b); 42 C.F.R. pt. 413; 42 C.F.R. § 405.511. The provider is compensated monthly, based on the submission of invoices, and is subsequently audited by cost year in order to ensure that the payments and services properly correspond. 42 U.S.C. § 1395g. In the event that the audit discloses that a provider was overpaid in an earlier cost year, the governing statute and the applicable regulations provide that the discrepancy be remedied by the withholding of future monthly reimbursements due the provider.[4] 42 U.S.C. §§ 1395g,

---

**3.** These amounts include interest charged by HCFA on the overpayments at the statutory rate. *See* 42 U.S.C § 1395g(d); 42 C.F.R. § 405.378(d).

**4.** In fact, the regulations distinguish between recovery of future Medicare reimbursements due the government on account of non-Medicare related debt and amounts due the government on account of previously overpaid Medicare reimbursements. The former are characterized as "offsets" and the latter as

"recoupment." 42 C.F.R. § 405.370 provides the following definitions:

> Offset. The recovery by Medicare of a non-Medicare debt by reducing present or future Medicare payments and applying the amount withheld to the indebtedness. (Examples are Public Health Service debts or Medicaid debts recovered by HCFA).
> Recoupment. The recovery by Medicare of any outstanding Medicare debt by reducing present or future Medicare payments and

1395x(v)(1)(A)(ii); 42 C.F.R. §§ 405.371, 413.64.

*B. Setoffs and Section 547(b)*

The first claim made by Holyoke is that the payments withheld by the government within 90 days of the petition date on account of the Overpayments, constituted setoffs avoidable by the Debtor as preferences, pursuant to § 547(b). Section 547 provides in relevant part:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

■ HCFA argues that the withheld prepetition payments are not avoidable as preferences because the recoveries constituted recoupment rather than offsets. At

applying the amount withheld to the indebt-

this point in its analysis, this Court need not distinguish between the two. Even if the withheld payments constituted offsets, it is well settled that offsets are not transfers avoidable pursuant to § 547(b). *Braunstein v. Branch Group, Inc. (In re Massachusetts Gas & Electric Light Supply Co., Inc.)*, 200 B.R. 471, 473 (Bankr. D.Mass.1996); *Belford v. Union Trust Company (In re Wild Bills, Inc.)*, 206 B.R. 8, 12–13 (Bankr.D.Conn.1997); *Eckles v. Petco Inc., Interstate (In re Balducci Oil Co., Inc.)*, 33 B.R. 847, 852 (Bankr.D.Colo. 1983).

11 U.S.C. 101(54) defines the term "transfer" as follows:

"transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption

11 U.S.C. § 101(54). Conspicuously missing from that definition is the term "setoff." The omission was no accident.

The legislative history of the definition of § 101(54) clearly illustrates that Congress intended to exclude setoff from the "transfer" definition in order to assure that setoff would be treated exclusively under the provisions of § 553. *In re Massachusetts Gas & Electric Light Supply Co., Inc.*, 200 B.R. 471, 473 (Bankr.D.Mass. 1996); *In re Wild Bills, Inc.*, 206 B.R. 8, 12–13 (Bankr.D.Conn.1997); *In re Balducci Oil Co., Inc.*, 33 B.R. 847, 852 (Bankr. D.Colo.1983). That legislative history is captured in the following identical statements by Representative Edwards and Senator DeConcini, the House and Senate sponsors of the bills:

edness.

Section 101(40) defines "transfer" as in the Senate amendment. The definition contained in H.R. 8200 as passed by the House included "setoff" in the definition of "transfer." Inclusion of "setoff" is deleted. The effect is that a "setoff" is not subject to being set aside as a preferential "transfer" but will be subject to special rules.

*In re Massachusetts Gas & Electric Light Supply Co., Inc.* at 473 (footnotes and citations omitted).

Indeed, § 553(a) provides:

Except as otherwise provided *in this section* and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case...

11 U.S.C. § 553(a) (emphasis supplied). By preserving the right of setoff, and restricting its application under Title 11 only as noted in sections 553(b), 362 and 363 of the Bankruptcy Code, it is clear that Congress did not intend that setoffs be recoverable as voidable transfers under § 547(b). *See Lee v. Schweiker*, 739 F.2d 870, 873 n. 4 (3rd Cir.1984)(citing *F.D.I.C. v. Bank of America*, 701 F.2d 831, 836 (9th Cir.1983)); *In re Wild Bills, Inc.* at 13 (holding that the failure of § 553 to reference § 547 precludes an analysis of setoff under the latter provision).

In light of the foregoing, Holyoke's claim for recovery of prepetition withheld payments, relying exclusively on its theory of avoidance under § 547, must fail.[5]

### C. Setoff, Recoupment and § 362(a)

■ Holyoke's second claim is that HCFA's postpetition withholdings constituted offsets which violated the automatic stay under 11 U.S.C. § 362(a). Here, the distinction between offset and recoupment matters.

11 U.S.C. § 362(a) provides, in relevant part, that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of—

. . . .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

. . . .

(6) any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case under this title;

11 U.S.C. 362(a)(3), (6).[6]

■ It is well settled that, while a postpetition setoff constitutes a violation of the automatic stay, recoupment does not. *See United Structures of America, Inc. v. G.R.G. Engineering, S.E.*, 9 F.3d 996, 999 (1st Cir.1993); *Sims v. United States Department of Health and Human Services (In re TLC Hosp., Inc.)*, 224 F.3d 1008, 1011 (9th Cir.2000); *Holford v. Powers (In re Holford)*, 896 F.2d 176, 179 (5th Cir. 1990); *First Union Nat'l Bank of Florida v. Abbey Fin. Corp. (In re Abbey Fin. Corp.)*, 193 B.R. 89, 94

---

**5.** The Court need not determine whether the result might have been different in an appropriate case under § 553, both because Holyoke did not set forth a claim for relief under that section and because, in light of the Court's ruling below (characterizing withheld payments as recoupment rather than offsets),

§ 553 would not have applied here in any event.

**6.** 11 U.S.C. § 362(a)(7) is inapplicable because that subsection applies only to the postpetition setoff of claims mutually arising prepetition.

(Bankr.D.Mass.1996)(recoupment considered "outside the scope of the automatic stay.").

■ Setoff is in the nature of a counterclaim, enabling a creditor to reduce the amount of a claim against it by an amount owed to the creditor on a mutual unrelated debt. *See United Structures* at 998 (referencing Black's Law Dictionary's definition of setoff); *see also In re TLC Hosp.* at 1011. Setoff is not a right created by the Bankruptcy Code, rather, it is a common law right preserved in bankruptcy cases under § 553, but subject to certain restrictions. *In re Balducci Oil* at 850; *Anes v. Dehart (In re Anes)*, 195 F.3d 177, 182 (3rd Cir.1999); *United Structures of America* at 998.

■ On the other hand, "[r]ecoupment is the satisfaction of an obligation by the crediting against it of a reciprocal obligation arising from the *same transaction,* typically the same contract." *In re Women's Technical Institute, Inc.*, 200 B.R. 77, 80 (Bankr.D.Mass.1996)(emphasis supplied)(citing cases). Furthermore, the courts have construed the "same transaction requirement" narrowly.

> For the purpose of recoupment, a mere logical relationship is not enough: the "fact that the same two parties are involved and that a similar subject matter gave rise to both claims, ... does not mean that the two arose from the 'same transactions.'" (citation omitted). Rather, both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations

Id. at 81 (quoting *University Medical Center v. Sullivan (In re University Medical Center)*, 973 F.2d 1065, 1081 (3rd Cir. 1992)).

The First Circuit Court of Appeals has not addressed the issue of recoupment in the context of withheld Medicare reimbursements. However, the theory of recoupment has been recognized and employed by various other courts finding no violation of the automatic stay in fact patterns virtually identical to those presented here. *See United States v. Consumer Health Services of America, Inc.*, 108 F.3d 390 (D.C.Cir.1997); *In re TLC Hosp.*, 224 F.3d 1008; *Sapir v. Blue Cross/Blue Shield (In re Yonkers Hamilton Sanitarium Inc.)*, 34 B.R. 385 (S.D.N.Y.1983); *In re Heffernan Memorial Hospital District*, 192 B.R. 228, 232 (Bankr.S.D.Cal.1996); *In re The Southern Institute for Treatment and Evaluation, Inc.*, 217 B.R. 962, 965–6 (Bankr.S.D.Fla.1998); *but cf. University Medical Center* at 1081(recognizing the existence of the recoupment doctrine but denying its application in a case where Medicare attempted to recover overpayments while the debtor/provider was in bankruptcy).

The majority view is well represented by *In re TLC Hospitals*, 224 F.3d 1008. In that case, the Ninth Circuit Court of Appeals found the "single transaction" theory best suited to characterize the system of Medicare reimbursements. *Id.* The Ninth Circuit reasoned that the particularities of the Medicare program and the "continuous system of estimated payments and subsequent adjustments" required by the applicable statutory provisions constituted the "same transaction for purposes of recoupment." *Id.* at 1012.

The Third Circuit Court of Appeals adopted the minority view in the *University Medical Center* case. 973 F.2d 1065. The Third Circuit reasoned that the provider agreement did not constitute a single, continuous transaction but rather only created a "mere logical relationship" between the parties. *Id.* at 1081; *see also In*

*re Healthback, L.L.C.*, 226 B.R. 464, 478 (Bankr.W.D.Okla.1998)(ruling that the Medicare agreement was not a single transaction, but rather was a series of individual transactions). The Court viewed each transaction which flowed from the Medicare/ Provider relationship as quite independent. Holyoke seemingly takes the *University Medical Center* view to its logical extreme, arguing that services and reimbursements for each individual Medicare patient, represents a single discrete transaction.

At first glance, the minority view has an analog in a case from this district, *Commonwealth of Massachusetts v. Dartmouth House Nursing Home, Inc. (In re Dartmouth House Nursing Home, Inc.)*, 1985 WL 17642 at *5 (D.Mass.). In the *Dartmouth House* case, the court held that recoupment was unavailable in the similar, but not identical, *Medicaid* context. *Id.* That case is easily distinguishable. In *Dartmouth House*, the Commonwealth of Massachusetts and Medicaid service providers executed new contracts each year. *Id.* at *1 (stating that Medicaid provider "[a]greements expire after twelve months and continued participation requires execution of a new agreement each year"). In contrast, the Medicare provider agreement is executed only once and is used for the duration of the relationship between the parties.

■ Although the question is close, this Court finds the majority view to be the better reasoned. True, the Medicare program's reimbursements are determined by services delivered to qualified recipients based on their individual needs; however, the statutory framework provides an ongoing and fully integrated program for the reimbursement of those providers who render services to all qualified Medicare recipients. The transactional relationship between the government and the provider is not an agreement by the government to provide reimbursement for specific services rendered to "Mary Jones" or "John Smith," but rather to reimburse providers who render specified services to any qualified patient. It is also true that the program is designed to pay estimated amounts to providers on a monthly basis, subject to audit. However, there is nothing integral to the services rendered or to the reimbursement for those services which mandates that the audit periods be set on an annual basis, instead of bi-annually or semi-annually. The government's agreement is not to quantify reimbursements based on a specific cost year, but rather to advance an estimated reimbursement on a monthly basis, subject to audit, which the government *chooses* be done by examining one year at a time. *In re TLC Hosp.* at 1013; *see also Consumer Health Services of America, Inc.*, 108 F.3d at 395("we do not think that the frequency of the audit appropriately defines the 'transaction.'").

The arguments raised by the proponents of the minority view are well made and far from frivolous. However, this Court believes that, on balance, characterizing the parties' conflicting claims by focusing upon the individual services rendered to patients or upon the audit time frames, sacrifices a sound view of the forest for a close examination of the trees. This Court rules that Holyoke and HCFA were parties to a single, continuous and integrated transaction from which arose a series of conflicting obligations over an extended period of time. Accordingly the withholding by HCFA, of amounts due to Holyoke postpetition, in order to recover prepetition Overpayments, was in the nature of recoupment, and did not violate the automatic stay under § 362(a).

## IV. CONCLUSION

For all of the foregoing reasons HCFA's Motion for Summary Judgment is

GRANTED. The Debtor's Motion for Summary Judgment is correspondingly DENIED.

A separate Judgment in conformity with this Memorandum of Decision shall enter herewith.